PROVIDENCE AND WORCESTER COM-
PANY, a Delaware Corporation, Defend-
ant Below, Appellant,

v.

George P. BAKER, Richard C. Bond, Jer-
vis Langdon, Jr. and Willard Wirtz,
Trustees of the property of Penn Cen-
tral Transportation Company, Debtor,
Plaintiffs Below, Appellees.

Supreme Court of Delaware.

Submitted May 11, 1977.

Decided Sept. 8, 1977.

E. N. Carpenter, II, and Allen M. Terrell,
Jr., of Richards, Layton & Finger, Wilming-
ton, for defendant below, appellant.

Bruce M. Stargatt and Richard A. Levine,
of Young, Conaway, Stargatt & Taylor,
Wilmington, for plaintiffs below, appellees.

Before HERRMANN, C. J., DUFFY and
McNEILLY, JJ.

HERRMANN, Chief Justice:

This appeal requires a testing of the va-
lidity, under 8 *Del.C.* § 151(a),[1] of the voting
restrictions contained in the certificate of
incorporation of the defendant Providence
and Worcester Company, a Delaware corpo-
ration (P & W).[2]  Also required is a testing

---

1.  8 *Del.C.* § 151(a) provides:

"§ 151. Classes and series of stock; rights.
"(a) Every corporation may issue 1 or more
classes of stock or 1 or more series of stock
within any class thereof, any or all of which
classes may be of stock with par value or stock
without par value and which classes or series
may have such voting powers, full or limited,
or no voting powers, and such designations,
preferences and relative, participating, optional
or other special rights, and qualifications, limi-
tations or restrictions thereof, as shall be stated
and expressed in the certificate of incorpora-
tion or of any amendment thereto, or in the
resolution or resolutions providing for the issue
of such stock adopted by the board of directors
pursuant to authority expressly vested in it by
the provisions of its certificate of incorpora-
tion.  The power to increase or decrease or
otherwise adjust the capital stock as provided
in this chapter shall apply to all or any such
classes of stock."

2.  Article Ninth of P & W's certificate of incor-
poration, in operation and effect since 1844,
provides in pertinent part:

"Meetings of the stockholders may be held at
such city, town or village within or without the
State of Delaware as may be named in the
By-Laws.  The annual meeting shall be held at
such time as required by the By-Laws; and at
all meetings stockholders, holding or represent-
ing by proxy not less than 2,500 shares, shall
be necessary to constitute a quorum of the
corporation, and each stockholder shall be enti-
tled to one vote for every share of the common
stock of said company owned by him not ex-
ceeding fifty shares, and one vote for every
twenty shares more than fifty, owned by him;
provided, that no stockholder shall be entitled
to vote upon more than one fourth part of the
whole number of shares issued and outstanding
of the common stock of said company, unless
as proxy for other members."

Also challenged here are certain proposed
amendments to P & W's certificate which re-
tain the voting ratios but increase the numbers

of the validity, under 8 *Del.C.* § 216,[3] of the quorum provisions contained in the P & W charter. The plaintiffs are the trustees in bankruptcy of Penn Central Transportation Company (Penn Central).

The Court of Chancery held that the voting restrictions are invalid under § 151(a); that, by reason thereof, the quorum provisions are valid under § 216. *Baker et al. v. Providence and Worcester Company*, Del. Ch., 364 A.2d 838, 848, 849 (1976). Accordingly, the Chancery Court granted summary judgment in favor of Penn Central and denied P & W's motion for summary judgment. P & W appeals.

### I.

Reference is made to the statement of facts set forth in the opinion below (364 A.2d at 840–2) which we find sufficient for present purposes.

### II.

■ First as to the charter voting restrictions:

Penn Central contends that under § 151(a) it is mandatory that all shares of stock within the same class have uniform voting rights; that the voting provisions of

the P & W charter violate that requirement.

P & W contends that § 151(a) does not prohibit the challenged charter provisions, either expressly or by necessary implication; that, therefore, the provisions are permissible under § 102(b)(1).[4] It argues that the charter provisions here challenged are voting restrictions on the stockholder, not on the stock, which are permissible under § 212(a)[5] and § 102(b)(1).

The Chancery Court agreed with Penn Central, holding that the P & W voting restrictions are impermissible under § 151(a) because, contrary to the "manifest language" and "patent directives" of § 151(a), "they are not on a class basis". (364 A.2d at 847–48).

We cannot agree that the answer to the problem presented is manifest and explicit on the face of § 151(a). The language of § 151(a), standing alone, neither permits nor prohibits the type of voting restrictions here challenged, either explicitly or by necessary implication. The statutory language may be read as Penn Central and Chancery Court view it; or it may be read as P & W views it. It follows from such ambiguity that our task is one of statutory construction.

proportionate to the increase of authorized stock. Since essentially the same questions are presented for determination both as to the present charter provisions and the proposed amendments, we refer herein to the charter provisions only for the sake of brevity.

**3.** 8 *Del.C.* § 216 provides:

"§ 216. Quorum and required vote.

"Subject to this chapter in respect of the vote that shall be required for a specified action, the certificate of incorporation or bylaws of any corporation may specify the number of shares and/or the amount of other securities having voting power the holders of which shall be present or represented by proxy at any meeting in order to constitute a quorum for, and the votes that shall be necessary for, the transaction of any business."

**4.** 8 *Del.C.* § 102(b)(1) provides:

"(b) In addition to the matters required to be set forth in the certificate of incorporation by subsection (a) of this section, the certificate of incorporation may also contain any or all of the following matters:

"(1) Any provision for the management of the business and for the conduct of the af-

fairs of the corporation, and any provision creating, defining, limiting and regulating the powers of the corporation, the directors, and the stockholders, or any class of the stockholders, or the members of a nonstock corporation; if such provisions are not contrary to the laws of this State. Any provision which is required or permitted by any section of this chapter to be stated in the bylaws may instead be stated in the certificate of incorporation;"

**5.** 8 *Del.C.* § 212(a) provides:

"§ 212. Voting rights of stockholders; proxies, limitations.

"(a) Unless otherwise provided in the certificate of incorporation and subject to the provisions of § 213 of this title, each stockholder shall be entitled to 1 vote for each share of capital stock held by such stockholder. If the certificate of incorporation provides for more or less than 1 vote for any share, on any matter, every reference in this chapter to a majority or other proportion of stock shall refer to such majority or other proportion of the votes of such stock."

For present purposes, § 151(a) must be read in conjunction with § 212(a). In our view, one must look primarily to § 212(a), and not to § 151(a), for the validity of the P & W voting restrictions. In the final analysis, these restrictions are limitations upon the voting rights of the stockholder, not variations in the voting powers of the stock *per se.* The voting power of the stock in the hands of a large stockholder is not differentiated from all others in its class; it is the personal right of the stockholder to exercise that power that is altered by the size of his holding. In the hands of smaller stockholders, unrestrained in the exercise of their voting rights, the same stock would have voting power equal to all others in the class.

It is reasonable to assume, we think, that if the General Assembly intended to bar the type of restriction on stockholders' voting rights here under review, such prohibition would appear in § 212, which is entitled "Voting Rights of Stockholders" and is a part of Subchapter VII, entitled "Meetings, Elections, Voting and Notice". Statutory limitations upon voting rights of stockholders are not unusual: e. g., details of voting by proxy [§§ 212(b) and (c)] and cumulative voting [§ 214] are prescribed; voting rights of joint owners, fiduciaries, and pledgors [§ 217] are limited; and the mechanics of voting trusts and voting agreements [§ 218] are specified under Subchapter VII of the Corporation Law.

We are of the opinion that, in the absence of any express provision in § 151(a), or elsewhere in the Law, prohibiting the P & W charter restrictions on voting, the provisions of § 212(a) control in determining the validity of those restrictions. Under § 212(a), voting rights of stockholders may be varied from the "one share-one vote" standard by the certificate of incorporation, subject only "to the provisions of § 213" of the Corporation Law.[6] It is significant, we think, that § 212(a) was not made expressly subject to the provisions of § 151(a) in a similar manner. The absence in § 212(a) of such similar cross reference to § 151(a) is, in

our judgment, indicative of the absence of any legislative intent to prohibit, by § 151(a), charter restrictions upon stockholders' voting rights such as are under challenge here.

The evolution and background of § 212(a) are significant in this connection:

It appears that, at common law, each shareholder had one vote regardless of the number of shares he owned. The early American approach was to limit by statute the voting power of any single stockholder. Later, mandatory one share-one vote statutes became common. See *Ratner, The Government of Business Corporations: Critical Reflections on the Rule of "One Share, One Vote"*, 56 Cornell L.Rev. 1 (1970).

Under the first Delaware Corporation Law, voting rights were left to the by-laws, 17 *Del.L.* Ch. 147, § 18 (1883); it was there provided that by its by-laws, the corporation could determine " * * * what number of shares shall entitle the stockholders to one or more votes * * *." This rule was changed by the Delaware Constitution of 1897, Art. 9, § 6 providing that "in all elections where directors are managers of stock corporations, each shareholder shall be entitled to one vote for each share of stock he may hold." By requisite action taken in 1901 and 1903, the Constitution was amended to strike out Art. 9, § 6; simultaneously, § 17 of the General Corporation Law was enacted (22 *Del.L.* Ch. 166) (1901) to become the progenitor of the present § 212(a), providing that the one share-one vote applies "unless otherwise provided in the certificate of incorporation". It appears that this portion of the present § 212(a) has remained substantially unchanged since 1901, despite numerous other revisions of the Corporation Law. See 1915 *Del.Code* § 1931; 1935 *Del.Code* § 2049; *Brooks v. State*, Del.Supr., 79 A. 790 (1911).

In this connection, it is noteworthy that voting restrictions such as are here involved were not strange to the General Assembly

---

**6.** 8 *Del.C.* § 213 provides for the determination of stockholders of record entitled to vote.

of 1901. Over the years prior thereto, a number of Delaware corporations, including the Farmers Bank of Delaware,[7] had been chartered by Delaware General Assemblies with voting provisions similar to those under scrutiny here. See 4 *Del.Laws*: Ch. 39, pp. 87, 95; Ch. 11, p. 15; Ch. 59, p. 179; Ch. 200, pp. 540–41; Ch. 201, p. 553; 6 *Del.L.* Ch. 321, p. 589; and 8 *Del.L.* Ch. 83, p. 88 (a railroad). It is reasonable to assume that if there was a legislative intent to bar such protective voting provisions, it would have been expressed in § 212(a). We find nothing in § 151(a) to overcome that assumption.

We hold, therefore, that the P & W charter provisions limiting stockholders' voting rights are not violative of § 151(a), and are valid under § 212(a) and § 102(b)(1). To hold otherwise, we think, would be to engage in impermissible "interstitial judicial legislation." Compare *Lehrman v. Cohen*, Del.Supr., 222 A.2d 800, 807 (1966).

### III.

Penn Central challenges the quorum provision of the P & W charter[8] as being invalid under § 216; they argue that the charter provision does not "gear the quorum definition to the voting power of the stock required to be present."

The attack upon the P & W quorum provision seems premised upon some requirement or mandate of § 216. There is no such statutory requirement or mandate. The Section provides that the certificate of incorporation or the by-laws of a corporation "may" specify the number of shares with voting power to be counted for quorum purposes. The permissive "may", and not the mandatory "shall", is utilized in this connection. Accordingly, it cannot be said that the P & W quorum provision is violative of any requirement of the Statute.

Furthermore, as we have held, the P & W voting restriction is upon the stockholder, not the stock. Upon the basis of that conclusion, the P & W quorum provision specifies a number of shares having voting power, in accordance with the § 216 guideline. We rule only upon the validity of the quorum provision, not upon possible difficulties in interpretation or application such as are posed by Penn Central. It is noteworthy, however, that the quorum provisions here challenged have been found operable and adequate for over a century.

We hold that the quorum provision of the P & W certificate of incorporation is not violative of § 216 and, therefore, is authorized by § 102(b)(1).

Reversed.

---

7. Until 1976, the State as stockholder was represented on the Board of Directors of the Farmers Bank by members of the General Assembly.

8. Here again, the same contention is addressed to proposed amendments to the charter as well as to the charter itself.