**UNILEVER ACQUISITION CORP., Plaintiff,**

v.

**RICHARDSON–VICKS, INC., et al., Defendants.**

No. 85 Civ. 7239 (RO).

United States District Court, S.D. New York.

Sept. 27, 1985.

**408**

Cravath, Swaine & Moore, New York City, for plaintiff; David Boies, Max Shulman, Stephen D. Poss, New York City, of counsel.

Skadden, Arps, Slate, Meagher & Flom, New York City, for defendants; Vaughn C. Williams, James C. Freund, Edward P. Welch, Margaret Enloe, New York City, of counsel.

OPINION AND ORDER

OWEN, District Judge.

Richardson-Vicks Inc., the makers of Vicks Vaporub and other well known products, is resisting a takeover attempt by the Unilever Acquisition Corp., a newly-formed subsidiary of Unilever United States, Inc., owners of, among others, Lever Bros., a household products company, and Thomas J. Lipton, Inc., the tea and soup manufacturer. Richardson-Vicks is a publicly-held Delaware corporation, with some one-third or more of its stock controlled or held by various Richardsons.

After earlier feelers in the summer of 1985, Unilever in early September sent a letter to the board of directors of Richardson-Vicks proposing to acquire all the shares of Richardson-Vicks at $54 per share. This offer was refused. On September 16, Unilever, which owns 100,000 shares of Richardson-Vicks stock, brought this suit alleging both Williams Act, 15 U.S.C. § 78n(e), *et seq.*, and state and common law violations, and almost simultaneously publicly announced a tender offer for all outstanding shares of Richardson-Vicks common stock, at a cash price of $56 per share if the Richardson-Vicks board of directors approved the offer and $48 if it did not.

Thereafter on September 17, the Richardson-Vicks board of directors voted and announced the issuance of a "Series A $4.00

Participating Cumulative Convertible Preferred Stock" to be distributed as a stock dividend to common stockholders of record as of September 27, 1985. Under the proposal, one share of the new preferred stock is to issue for each 5 shares of common. Among other benefits, each preferred share will entitle the holder to cast 25 votes on all issues on which the common can vote. However, if the preferred share is transferred, the new holder may exercise only 5 of those 25 votes for the first 36 months the stock is held. Thus, if the stock dividend is made as planned, the result will be that while each common stockholder will have the same voting power as theretofore, that stockholder will be unable to transfer those voting rights, since two-thirds will be unexercisable for 36 months following the transfer. This, it appears, would make it impossible for Unilever to acquire Richardson-Vicks at this time, for without the consent of the Richardson group, even were Unilever to succeed in purchasing all non-Richardson shares, the effect would be to increase the Richardson group's command of the total exercisable vote from about one-third to an absolute majority for the following 36 months.

Unilever, believing this new stock dividend to be an illegal interference both with its rights as a stockholder and with its attempt to acquire the company in violation of its rights under Delaware law, moved for an order temporarily restraining said dividend. I granted this relief in an oral opinion on September 19. The same issue is now before me now on Unilever's motion for a preliminary injunction enjoining the issuance of the stock dividend pending trial.

As hardly needs restating, in this Circuit, before a preliminary injunction will issue, a plaintiff must show, first, irreparable harm and, second, either likelihood of success on the merits or both sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Dallas Cowboy Cheerleaders,*

*Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200 (2d Cir.1979).

Certain principles are basic. Thus, a board of directors, having in good faith and after reasonable deliberation determined that a tender offer is not in the company's best interest, may resist the offer by any legal means available. *Crouse-Hinds Co. v. Internorth, Inc.*, 518 F.Supp. 390, 408 (N.D.N.Y.1980), *reversed on other grounds*, 634 F.2d 690 (2d Cir.1980). However, the business judgment rule does not protect actions taken in bad faith or in self-interest such as resisting a take-over solely to entrench the directors' control. *Crouse-Hinds*, 634 F.2d at 702. Further, under Delaware law, action of the board which is calculated to alter the structure of the corporation and results in a fundamental transfer of power from one corporate constituency to another, is not shielded by the business judgment rule. *Moran v. Household International, Inc.*, 490 A.2d 1059, 1076 (Del.Ch.1985), *appeal pending* (Del.Sup.Ct.1985).

While noting that the Richardson-Vicks directors determined to issue the proposed stock dividend after consultation with the highly respected firm of Kidder, Peabody, I do not need to reach the issue of the board's good faith, concluding that the only issue I need reach at this time is the permissibility of the step that the Richardson-Vicks board has taken.

Under Delaware statute, each share of common stock is entitled to one vote, unless the corporate certificate of incorporation provides otherwise. Del.Gen. Corp.Law § 212. Furthermore, to change the certificate of incorporation in matters affecting shareholder rights, the board must ordinarily submit the proposed amendments to the shareholders at an annual or special meeting. Del.Gen. Corp.Law § 242. However, the board is also empowered to authorize by resolution, without shareholder approval, the issuance of new stock not authorized in the certificate of incorporation if it is explicitly authorized to do so by the provisions of the certificate of incorporation and it files a certificate meeting certain requirements with the Secretary of State. Del.Gen. Corp.Law § 151(g). One unreported decision of the Delaware Chancery court has relied on this provision in refusing to enjoin issuance without stockholder authorization of a "piggyback preferred stock" which would have the effect of increasing from 75% to 80% the majority necessary to consumate certain mergers. See *National Education Corporation v. Bell & Howell Co., et al.*, #7278 (Del.Ch.Ct.1983). While defendant has filed a certificate pursuant to this section, plaintiff maintains that the board acted beyond its authority in so doing, since while the Richardson-Vicks certificate of incorporation authorizes the board to issue preferred stock with the terms to be set by the board, it does so only with the restriction that all shares of any series of preferred stock have identical voting rights.

In addition, the Delaware statute explicitly provides that "no restriction [on transfer of shares] shall be binding with respect to securities issued prior to the adoption of the restriction unless the holders of the securities are parties to an agreement or voted in favor of the restriction." Del.Gen. Corp.Law § 202(b).

The proposed dividend both restricts transferability of Richardson-Vicks common stock and affects its voting rights, since after the issuance of the dividend, a common stockholder will be unable to transfer two-thirds of his voting power. In addition, it undoubtedly will discriminate hereafter among different holders of shares of the same issue of preferred stock, since some will, while others will not be able to vote the full number, depending on the circumstances of acquisition.

Defendant points out that discrimination among stockholders, when authorized by the stockholders or under extreme circumstances, is not in itself a violation of Delaware law and has been upheld by the Delaware courts, although under significantly different circumstances. See *Providence & Worchester Co. v. Baker*, 378 A.2d 121 (Del.Sup.1977) (where authorized

for over one hundred years by corporate charter, large stockholders may be restricted to fewer votes per share than small stockholders); *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946 (Del.Sup.Ct. 1985) (in fending off well known "greenmailer," corporation permitted to make exchange offer to all shareholders other than the greenmailer). However, these cases are not applicable where the discrimination strips the shareholder of the ability to transfer voting rights without prior warning, compensation or shareholder authorization, creating two classes within one series of shares—those that have been recently acquired, with reduced votes, and those that have not, with full votes—and it does this in the face of a provision of the corporation's certificate of incorporation explicitly providing that "[a]ll shares of any one series of preferred stock shall be identical with each other in all respects." Art. 4, § B-III. Under Delaware law, a change in corporate structure of this magnitude, reducing the transferability of a shareholder's ability to vote and the value of his or her asset to this degree, requires stockholder approval which has not been obtained. Del.Gen.Corp.Law § 202(b); *Schnell v. Chris Craft Ind., Inc.*, 285 A.2d 437 (Del. Sup.Ct.1971).

■ In conclusion, I find that plaintiff has established irreparable injury in that the impermissible issuance of the preferred stock dividend will severely limit if not eliminate its ability, as a shareholder intending to acquire additional shares, to control and/or influence the management and future course of Richardson-Vicks. See *Asarco v. MRH Holmes A Court,* '#1123 (D.N.J.1985). Further, plaintiff has shown likelihood of success on the merits. Accordingly, the preliminary injunction restraining the issuance of the preferred stock dividend is granted. The foregoing constitutes the Court's findings of fact and conclusions of law and is so ordered. A formal order may be submitted on notice.