## Ex parte ELIPPHRAS HOLMES and ten others.

Notice of a motion, under the act to facilitate proceedings against incorporated companies, &c. (sess. 48, ch. 325, s. 9.) which draws in question the election of directors of a company, is sufficient, if served on the directors, whose election is questioned. It need not be served on the president, or the directors, whose seats are not questioned.

J. W. MULLIGAN moved for a rule to establish the election of Zebedee Ring, and 24 others, who, as he claimed, had been chosen directors of the Tradesmen's Insurance Company in the city of New York.

He read affidavits, stating that the company had been incorporated, by an act of the legislature passed the 14th March, 1825, (see laws sess. 48, ch. 31;) that they went into operation about the 20th of April, 1825 ; that on the 8th of November last, they passed a resolution that they would accept 1582 shares of their capital stock, then held by the New Jersey Manufacturing and Banking Company, in part payment of funds on deposit in that company, belonging to the Insurance Company ; and the latter appointed Z. Ring, A. M. Merchant, and W. P. Hallett, three of their directors, trustees to receive and hold the stock in their behalf, subject to the direction of the board of directors. That on the 9th November last, the shares were trans-

Nor need notice be given to persons whose right to vote is in question.

The counsel who appear in behalf of such an application, and the counsel who oppose, will be deemed by the court, *prima facie*, authorized thus to appear.

But any one named as a relator may move to have his name stricken from the proceedings, if in truth, he did not authorize the application.

The proceedings are, in the first instance, the same as upon an ordinary non-enumerated motion ; and counter affidavits need not be served.

One, in whose name stock stands on the books of an incorporated company, *as trustee*, cannot vote on such stock. The right of voting belongs to his *cestui que trust.*

A company cannot hold its own stock, so as to give its directors or trustees a right to vote upon it.

Yet it may take its own stock in pledge, or as security for a debt due to it, where this is necessary.

Rule setting aside an election of directors, and ordering a new election, pursuant to the statute. (sess. 48, ch. 325, s. 9.)

ferred accordingly; and a check drawn by the Insurance Company, upon the New Jersey Manufacturing and Banking Company, for $79,100 in full payment for the shares; and the trustees executed a declaration of trust to the Insurance Company, declaring that the stock was held in trust for them; and that, when sold, the proceeds should be paid to them.

That by the act of incorporation, the stock, property, affairs and concerns of the corporation, were to be managed by 25 directors, to be elected annually, on the first Monday in May; the election to be holden under the inspection of three stockholders, not being directors; to be appointed previously to every election by the board of directors.

That on the 26th of April last, a meeting was held, and directors appointed; when it was resolved by the directors, that the 1582 shares, held by the three trustees, should be voted upon at the (then) next election, by Z. Ring, chairman of the trust committee. That the whole number of the company's shares is 4000.

That at the next election, (May 1st, 1826,) the vote was offered by Ring; but objected to by Hallet, one of the trustees, who called for the transfer books. That these being produced, it was found that the stock stood in the names of " Zebedee Ring, Aaron H. Merchant and William P. Hallet, trustees." That, notwithstanding this objection, the vote was received by the inspectors.

That in consequence of this vote being received, John Leveridge, and ten others, were elected; and reported as duly elected by the inspectors.

The object of the present motion was to vacate the election of these eleven directors; and establish that of the eleven who were candidates against them. The candidates on both sides were named in the affidavits; and as to thirteen persons, there was no dispute but that they were duly elected.

The motion was founded on the act entitled "an act to prevent fraudulent bankruptcies by incorporated companies; to facilitate proceedings against them, and for other

NEW YORK, purposes; passed April 21, 1825," (sess. 48, ch. 325, and
May, 1826.  see a summary of this act, 4 Cowen's Rep. 122-3, in note.)

Ex parte
Holmes.

*J. Smith* and *J. Platt*, contra, objected that notice of
the motion should have been given, not only to the direc-
tors whose seats were contested (which they admitted had
been done; but to the president and the other directors of
the company.   They said, all the stockholders of the insti-
tution were interested in this proceeding; and entitled to
be heard through the president, and the other officers whose
election was confessedly legal.

*Curia.*   The statute is, that notice shall be given to the
adverse party, or to those who may be affected by the ap-
plication.   (Sess. 48, ch. 325, s. 9.)

The directors whose seats are sought to be vacated, are
we think, the true parties, and the only persons to be affect-
ed within the meaning of the act.   The application comes
in place, and is in nature of an information, in nature of a
*quo warranto.*   Had an information been filed, these direc-
tors would be the proper, and the only proper defendants. Sup-
pose we should order an information to be filed, as we may
do, if the nature of the case require it : clearly the process,
in such a case, could go only against the directors whose
seats are questioned.

*Platt.*   The three persons who were allowed to vote on
the 1582 shares, are deeply interested in this question.   Yet
they have had no notice.

*Curia.*   We think no notice was necessary to them.

*Platt.*   We then deny the authority of the counsel who
appear in behalf of the application; and we demand, that
before they be permitted to proceed, they prove their autho-
rity to this court.   Here is no *lis pendens ;* and, of course,
the case is not within the rule which declares that the ap-
pearance of an attorney shall be good as to the court, with-
out showing his warrant.   This rule is confined to a suit
brought.   [And he offered affidavits to show, that as to some
of the applicants no authority whatever had been given.]

NEW YORK,
May, 1826.

Ex parte
Holmes.

*Curia.* It may be very proper to strike out the rames of those who move that this should be done, on affidavit. The motion goes on upon the peril of costs ; and like a lessor in ejectment, those named as applicants may see to it that their names are not used, so as to impose on them an unauthorized expense.

But we cannot consent, on a mere unsupported suggestion of want of authority, to require that the gentlemen concerned should go into proof that they are properly here in the names of those whom they profess to represent. They come as officers of the court, whether to prosecute a suit or make a motion ; and, as to the court, they must be taken to have a warrant. They are amenable, as in other cases, should it turn out that they are not retained. Suppose it should be objected that the counsel who oppose are not armed with proper authority. This might as well be done ; and thus, before we could go on to a hearing, we must appoint a day for proof that the officers of the court have a right to appear before it in their respective duties. *Prima facie,* we must take it that they act properly.

*E. T. Pinckney,* (same side with Smith and Platt,) was then proceeding to read affidavits upon the merits ; when,

*Mulligan* objected, that the affidavits were in nature of pleadings ; and that not only the affidavits for the motion, but against it, should be served ; that the applicants had not been served with the affidavits now proposed to be read.

*Curia.* You must go on as in case of an ordinary non-enumerated motion. The counter affidavits not being served, is, in this view, no reason against their being read. Should we finally see that, in consequence of the omission, the applicants are surprised, it may be a reason to give further time, or award an issue.

*Pinckney* then proceeded to read various affidavits to show that the 1582 shares upon which the trustees had voted, were owned by them in trust for the insurance company,

NEW YORK,
May, 1826.

Ex parte
Holmes.

*bona fide* and that the stock had not been created in order to control the direction of the company.

It appeared from these affidavits, that seven persons, composing the finance committee of the company had at its first organization, procured to themselves stock in the company amounting at par to $113,300, a majority of the whole stock of the company; which enabled them to control its concerns. Their mode of doing it was this; they deposited about $80,000 received for stock in the New-Jersey manufacturing and banking company, at Hoboken, of which one of that committee was president; and the further sum of $113,000 was placed in the books of the bank to the credit of the Tradesmen's Insurance Company, the whole bearing an interest of six per cent. per annum. And they hypothecated most or all of their stock to the bank. It also appeared that four of the committee had privately combined to leave the whole amount of the insurance company's capital in the possession of the bank for one year at least; and to apply to the legislature for a bank; and then to withdraw the money for the use of the new bank. That in consequence, the insurance company had been prevented from making various loans at seven per cent.; the bank, by direction of a majority of the finance committee, refusing to accept checks drawn by the company. That the directors having discovered the situation of their funds, and fearing their loss, were induced to take a transfer of the stock of the company to the amount of $79,100, (the 1,582 shares in question) being the stock hypothecated to the bank in the manner above mentioned. That this was accepted in payment of so much; the bank owing the company, in the whole, about $155,900; and agreeing to secure them for the balance in some other way. That the directors thought it their duty to take the stock at par-value, though it was then from five to ten per cent. below par in the market; and to pay the president of the bank $2000. That, accordingly, the resolution of the 8th of November last, mentioned in the depositions on the part of the applicants, was passed; and the check for the $79,100 drawn for the purpose of cancelling so much of the debt then due from the bank; and not by

way of payment for the stock so transferred. That there is still due from the bank to the company about $45,000 unsecured.

*Mulligan*, for the relators. Without inquiring whether one of several owners of stock, tenants in common or joint tenants, would have a right to vote, without the concurrence of his co-tenants, it is clear that one of several trustees for the company cannot. They were not only joint tenants, but trustees. The trust was personal to themselves; and their united concurrence was necessary in this, as it must be in every act of trustees. No proxy was made. It was in truth, a vote by the minority of the trustees. They stood like any other persons having a joint power. A single individual cannot execute it.

But suppose a majority could control in a purpose of the trust; they could not vote. The declaration of trust to which they were confined, contemplated no such power. It was merely to receive and pay over the money on sale of the stock.

They were not owners within the test given by the act of April 21st, 1825, (sess. 48, ch. 325, s. 11;) for the stock was not holden in their name, within the meaning of that act. It stood in the name of the directors; and the vote was their's.

The directors had no right to use this stock for the purpose of controlling the election. When it came to the hands of the company, it ceased to be stock. In their hands, it has no legal existence. It is only in the hands of the stockholders that it can be any thing. The law cannot be evaded by placing it in the name of trustees for the use of the company. It is still their property. They have a right to control it for all purposes; and if they are allowed to vote upon it, the consequence is, that a majority of the directors may maintain themselves in office, by the votes of stock in which they have no interest as individual stockholders.

*P. W. Radcliff* and *J. Platt*, contra. There can be no doubt that the stock was properly obtained; and properly

NEW YORK, held by the trustees in their own names.  The question is.
May, 1826.  what rights they acquired.

Ex parte      There is no statute or common law rule, which prohibits
Holmes.   the vote of this stock.   It is not necessary that voters should
hold stock in their own right.   The charter contemplates a
vote upon stock by persons holding in the right of another.

The 5th section, (sess. 48, ch. 31,) requires that a director
shall hold in his own right; otherwise he is not eligible.
But no such distinction is made as to voters.   For this pur-
pose, it speaks of stockholders generally.   And by the
statute cited on the other side, the person or persons in
whose name the stock stands, when they come to vote, are
declared to be qualified.   Now each person cannot vote,
when several hold as co-tenants.   There can be but one
vote; and this may be given by a majority; or, indeed,
the vote of one might be good, if there be no dissent of the
others.   If only two, the dissent of one might well neutra-
lize the vote; but this would be unjust as to a majority.
If it be so as to three persons, it would be the same of two
hundred.   We agree that the trustees are joint tenants;
but they are trustees for an institution which acts through-
out by majorities.   They hold under the board of direc-
tors.   These are the *cestuis que trust*, the parties concern-
ed; and it does not lie with the relators to question the
vote which accords with the views of the real parties in
interest, on account of the form in which it was given.   It
is enough that they declared which of their trustees should
vote for them.   They had a right thus to constitute him
their proxy.   There is no particular form of making a
proxy.   It may as well be by a corporate resolution as in
any other way.   The power was, in some respects, of a
general or public nature; in which view, it is clear that a
majority may vote.   Here a majority were actually assen-
ting.   If their trust was of a public nature, then there is no
doubt the act was valid.   (1 B. & P. 236, per Eyre, Ch. J.
2 Atk. 212.   3 T. R. 592-3-4-5, per Ld. Kenyon, and Bul-
ler, J. 6 John. 41. Cowp. 377. 6 T. R. 398.)

By the act of April 21, 1825, (s. 9,) this court are to pro-
ceed in regard to these elections as right and justice may
require.   It is, *quoad hoc*, a court of chancery; and will

take a wide and equitable view. (10 John. 495.) A court of chancery may even change a trustee in order to promote the equity of the case. It will do this wherever he acts improperly or unreasonably. It will always prevent an abuse of trust.

*T. A. Emmet*, in reply. Certainly the directors could not vote : yet it is said they could make a proxy ; and that they had done so by their resolution. The law undoubtedly means to confine the right of voting, where stock is hypothecated, to the *cestui que trust*. The persons to whom it is hypothecated can have no control over the votes of the general owners.

It is not denied, that if this stock had stood in the name of the company, it would have been a diminution of so much of their stock capable of voting. Is it not the same thing standing in the name of trustees ? The stock is inactive. It produces nothing. It is held in trust for the company. Is it more or less than the stock of the company ? They may take a pledge of stock from necessity ; but they are bound to sell it the very first opportunity ; and cannot keep it to vote upon. The sole purpose of the pledge is security. That is not increased by exercising the right to vote.

In this way, an irresistible power may be obtained by the directors to control the election at any time ; and bid defiance to the stockholders. No matter that they may have acted *bona fide*, in receiving this pledge. There is no difference between buying stock for the purpose of voting, and buying it for another purpose, but using it to control the election.

If we are so far wrong, a mere majority of the trustees could not vote. If the refusal of one to concur was a breach of trust, the court of chancery alone can give relief. Trustees are chosen for the benefit of all the *cestuis que trust*. Each trustee represents all. A minority of joint owners cannot control the rights of the whole unless it be so agreed. (4 John. Ch. Rep. 573.) Besides ; the vote in question is not a compliance with the general act, (sess. 48, ch. 325, s. 11,) on the subject. This declares, that stock standing in

the name of *persons* shall be voted upon by *themselves* directly, or by proxy. This is the vote of only two out of three joint stockholders; one dissenting expressly.

*Curia.* The fact to facilitate proceeding against incorporated companies, &c. (sess. 48, ch. 325,) upon which this motion is made, provides, (s. 11,) that, " in all cases, where the right of voting upon any share or shares of the stock of any incorporated company of this state, shall be questioned, it shall be the duty of the inspectors of the elections to require the transfer books of said company, as evidence of stock held in the said company; and all such shares as may appear standing thereon, in the name of any person or persons, shall be voted on by such person or persons, directly by themselves, or by proxy, subject to the provisions of the act of incorporation." There is nothing in the act of incorporation of the Tradesmen's Insurance Company, which interferes to prevent the application of this provision; and it is broad enough, literally to include all stockholders, whether in their own right, or as mere trustees for others.

But the question remains, whether the latter are to be deemed stock holders, within the spirit of the act. True the stock on which they voted, in this case, stands in their name; but on the face of the entry they are declared to be mere nominal holders. The real owner of the stock should vote, especially where his name is truly expressed in the books; though it might be otherwise, if he choose to have the entry simply in the name of another, without expressing any trust. Now these three persons, a majority of whom claim a right to vote, are mere trustees; and they are trustees not for the directors; but the company, the corporation itself. If there could be a vote at all upon such stock, one would suppose that it must be by each stockholder of the company, in proportion to his interest in it.

This brings us to the important difficulty in the case; which is, whether stock thus held can vote at all. And we think it is not to be considered as stock held by any one for the purpose of being voted upon. No doubt the company may, from necessity, as in this case, take their own stock in

piedge or payment; and keep it outstanding in trustees, to prevent its merger; and convert it to their security. But it is not stock to be voted upon within the meaning of the charter, or the general act upon which we are proceeding. It is not to be tolerated, that a company should procure stock, in any shape, which its officers may wield to the purposes of an election; thus securing themselves against the possibility of removal. The motion is accordingly granted; but as the question is a new one, this must be without costs.

<div style="float:right">NEW YORK<br>May, 1826.<br><br>Ex parte<br>Holmes.</div>

The view which we have taken of the case precludes the necessity of determining the other question raised at the bar; whether joint holders of stock must all concur in a vote: whether they must vote severally according to their several interests or the vote may be controlled by a majority.

We direct the following rule:

*Supreme Court.*

In the matter of the application of Eliphras Holmes, &c. (naming the other ten who applied.)

On reading and filing a notice of motion for a rule, or order to confirm and establish the election of Zebedee Ring, &c. (naming 24 persons,) as directors of the Tradesmens' Insurance Company in the city of New York; and to make such order, and give such relief in the premises as right and justice might seem to require; and on reading and filing the depositions and proofs of the parties, as well in behalf of, as against the said application; and after hearing counsel, as well on behalf of the said application, as in opposition thereto, it is adjudged that the fifteen hundred and eighty two shares of stock mentioned in the said depositions of the said parties, as being held in trust for the benefit of the said insurance company, were illegally voted upon by the trustees holding said stock for the said company; the trustees not being stockholders within the provisions of the eleventh section of the act entitled "An act to prevent fraudulent bankruptcies by incorporated companies, to facilitate pro-

NEW YORK,  ceedings against them; and for other purposes, passed April
May, 1826.   21, 1825."

The People       And, it is therefore ordered, that the election of the follow-
v.
Supervisors of  ing persons, viz. John Leveridge, &c. (naming the other
Delaware.    ten whose election depended on the vote upon the 1582
shares,) being eleven of the recently elected directors, be set
aside ; on the ground that they were unduly elected by vir-
tue of the vote given upon the said trust stock.

And it is further ordered, that a new election of eleven
directors of the said company, in the place of the persons
last above mentioned, be held under the inspection of John
Gray, James W. Pinckney, and Micajah Reynolds, the in-
spectors heretofore appointed by the board of directors, of
the said company ; and under whose direction the late elec-
tion was held.

And it is further ordered, that the officers of the said com-
pany forthwith cause public notice of such new election to
be given, for twenty days prior to the holding of the same,
in such manner as is prescribed by the charter of said com-
pany in cases of election.