In the Matter of JAMES C. STRONG, Appellant, v. EDWARD B. SMITH, Respondent.

*Disputed elections—applications under* 1 *R. S.,* 603, § 5 — *court will go behind transfer books.*

Where an application is made under 1 Revised Statutes, 603, section 5, to settle contests arising out of a disputed election, the court may go behind the entries in the transfer book of the company, and determine whether a transfer appearing thereon was a sale or only a pledge of the shares, and whether the pledgor or pledgee was entitled to vote thereon.

APPEAL from an order of the Special Term in Erie, denying a motion made by the appellant under 1 Revised Statutes, 603, section 5, for an order declaring the appellant to have been duly elected the president and one of the directors of the "Buffalo Mey Grain Drying Company," at an election held on the 5th of June, 1877, and that the respondent, Edward B. Smith, has no title to either of said offices, or for such other relief as the court shall deem just.

*John C. Strong,* for the appellant.

*Spencer Clinton,* for the respondent.

Smith, J. :

The statute under which the motion herein was made is part of a title of the Revised Statute headed, " Special provisions relating to certain corporations." Section *five* of the title makes it the duty of this court, upon the application of any person aggrieved by or complaining of " any election or any proceeding, act or

matter in or touching the same," to proceed forthwith, and in a summary way to hear the affidavits, proofs and allegations of the parties, or otherwise inquire into the matter or causes of complaint, and thereupon to establish the election so complained of, or to order a new election, or make such order and give such relief in the premises, as right and justice may appear to the court to require. And it is provided that the court may, if the case shall appear to require it, either order issues to be made up in such manner and form as the court may direct, in order to try the respective rights of the parties, who may claim the same, to the office or franchise in question, or may give leave to exhibit, or direct the Attorney-General to exhibit an information in the nature of a *quo warranto* in the premises. (1 R. S., 603, § 5.)

The contest in this case involves the question whether the appellant had the right to vote, at the election above referred to, upon certain shares of the capital stock of the "Mey Grain Drying Company," to the number of four hundred, and that question depends upon whether a certain transfer of said shares, which the appellant had theretofore made to the firm of Smith, Davis and Clark, was a sale, or merely a pledge of such shares. It is undisputed that, if the appellant had been permitted to vote upon those shares, the respondent would not have been elected to the office in question. We understand from the opinion delivered by the judge, who held the Special Term, that he denied the motion upon the ground that as the transfer book did not show that the shares in question stood in the name of the appellant at the time when he offered to vote on them, the fact was not only conclusive upon the inspectors of election, but it precludes all inquiry in this proceeding as to whether the transfer made by the appellant was an absolute sale or a mere pledge. We concur with him in holding that the transfer book was conclusive upon the inspectors; but we are of the opinion that the court at Special Term had the power, and it was its duty, to go back of the entries in the transfer book, and inquire whether the appellant had the lawful right to vote upon the shares in dispute, and if he had, then to order a new election, or to give other appropriate relief. This conclusion we think accords with the statute.

The object of the statute is to provide a summary mode of

redressing a wrong, done at an election of the officers of a corporation. The statute provides that the inspectors shall be bound by the transfer book ; but as errors may creep into the transfer book it was deemed expedient to provide a mode of correcting the results of such errors. To that end, the court is vested with ample power to inquire into the cause of complaint, on motion, and to give relief by ordering a new election or otherwise, as right and justice shall require. And for that purpose the court is authorized to order issues to be made, in the very proceedings by motion to try the title to the office in dispute, or to direct a suit by information in the nature of a *quo warranto* for the like purpose. These provisions are obviously inconsistent with the idea that the court is concluded by the entries in the transfer book, and they clearly indicate that the court is vested with power to go back of the transfer book, and to try the rights of the respective claimants to the office in dispute.

These views seem to be supported by adjudged cases. The statute referred to was first adopted in 1825. (Laws of 1825, ch. 325, § 9.) In *Ex parte Holmes* (5 Cow., 426), it appeared that, at an election of officers of a corporation known as the Tradesmen Insurance Company of the City of New York, certain shares of the stock of the company stood on the transfer book in the names of " Zebedee Ring, Aaron H. Merchant and William P. Hallett, trustees." Ring, one of the trustees, was allowed to vote on those shares, notwithstanding the objection of Hallett, another trustee, and by such vote certain directors were elected. On motion, under the statute, it appeared by affidavit that Ring and his co-trustees held the shares in trust for the company, and that the directors of the company had duly resolved that those shares should be voted upon by Ring, the chairman of the trust committee. The court held that as the stock was held in trust for the corporation it could not be voted on at all, and upon that ground they set aside the election and, ordered a new one. In the subsequent case of *Ex parte Willcocks* (7 Cow., 402), the court commented on the *Case of Holmes*, and said : The shares stood in the names of persons who were trustees for the corporation. They were designated as trustees. Literally they might have voted, but we allowed it to be shown that they were trustees.

To give the transfer books such a binding effect as to shut out all inquiry in every case, might enable the directors to control the election through the funds of the institution. (page 412.) That the court were of the opinion that the trustees in *Ex parte Holmes* had an apparent right to vote, according to the entry in the transfer book, is further shown by the case *of Barker*. (6 Wend. 509.) But by proof *aliunde*, that they were trustees for the corporation, their apparent right was overthrown. In the *Matter of the Long Island Railroad Company* (19 Wend., 37), an election of directors was set aside under the statute, it appearing by affidavits that at the time of his election one Lord, who offered to vote on certain shares and was refused, and whose vote, if it had been received, would have changed the result, was the owner of such shares, by assignment from the individual in whose names they stood upon the books, and that he had applied at the proper place to have the transfer entered upon the books, which was refused, for the reason that the stock had already been declared forfeited for default in payment of calls. The court being of opinion that the directors had no power to declare the stock forfeited, and that the proceeding in that regard was void, held that Lord's votes were improperly rejected, and they set aside the election and ordered another. The case *of Holmes* and that of the *Long Island Railroad Co.*, are direct authority for the position that in a proceeding under the statute the court may go behind the entries in the transfer book, for the purpose of determining the right to vote. In each of them, the facts were undisputed, and consequently it was not necessary to direct an issue to be framed or an action to be brought; but, if such a course had been needed, it is obvious that the court would not have declined to order it, on the ground of a want of power. We are of opinion that the Special Term erred in holding that it had not power to determine the question whether the transfer of the shares was a sale or a pledge, and whether the appellant had the right to vote upon them, notwithstanding they stood upon the transfer book in the name of the respondent. If the shares were pledged merely, the right to vote upon them seems to be secured to the pledgor by the act of 1848 (Laws of 1848, ch. 40, § 17), under which the company was incorporated. The right of voting on shares, in every corporation, is

made subject, by the statute under which this proceeding was instituted, to the provisions of the act of incorporation. (1 R. S., 604, § 6.)

If the Special Term, upon a consideration of the subject, had concluded that the appellant had the right to vote upon the shares in dispute, it could have granted relief by setting aside the election and ordering a new one, under the clause in the notice of motion, asking for general relief. It could not have declared the appellant elected, because he had not received a majority of the votes. We are asked by the appellant on this appeal to determine whether he had the right to vote on the shares in question, and if we conclude that he had to give him the relief which the Special Term might have given. But the question whether the shares were sold or pledged, and which of the parties had the right to vote on them, ought first to be passed on at Special Term. As more than a year has elapsed since the election, and the term of the office in dispute has expired, there is no objection, on the score of delay, to going again to the Special Term; and, by that course, each party will be at liberty to produce additional papers and proofs, if so advised. The result is that the order of the Special Term, denying the motion, is reversed, with leave to the appellant to renew his motion at Special Term, the appellant to have costs and disbursements of the appeal, and costs of the motion at Special Term.

Present — SMITH and NOXON, JJ., TALCOTT, P. J., not sitting.

Order appealed from reversed, with leave to appellant to renew his motion at Special Term, the appellant to have $10 costs and disbursements of the appeal, and $10 costs of the motion at Special Term.