Marvin M. SPEISER, Plaintiff,

v.

Leon C. BAKER and Health Med Corporation, a Delaware corporation, Defendants.

Leon C. BAKER, Cross-Counterclaimant,

v.

Marvin M. SPEISER, Health Med Corporation, Health-Chem Corporation, a Delaware corporation, and Medallion Group, Inc., a Delaware corporation, Cross-Counterclaim Defendants.

Civ. A. No. 8694.

Court of Chancery of Delaware, New Castle County.

Submitted: Jan. 7, 1987.
Decided: March 19, 1987.

James F. Burnett and Donald J. Wolfe, Jr. of Potter Anderson & Corroon, Wilmington, and Fried, Frank, Harris, Shriver & Jacobson, New York City, of counsel, for plaintiff.

David A. Drexler of Morris, Nichols, Arsht & Tunnell, Wilmington, and Koether, Harris & Hoffman, New York City, of counsel, for defendants.

ALLEN, Chancellor.

The present action is brought under Section 211(c) of our corporation law and seeks an order requiring the convening of an annual meeting of shareholders of Health Med Corporation, a Delaware corporation. The Answer admits that no annual meeting of stockholders of that corporation has been held for several years, but attempts to allege affirmative defenses to the relief sought. In addition, that pleading asserts an affirmative right to a declaratory judgment unrelated, in my opinion, to the annual meeting.

Pending is a motion by plaintiff seeking (1) judgment on the pleadings and (2) dismissal of defendant's affirmative claim for relief. That motion raises two distinct legal issues. The first relates to plaintiff's Section 211 claim: it is whether defendant,

having admitted facts that constitute a *prima facie* case for such relief, has pleaded facts which, if true, would constitute an equitable defense to the claim.

The second issue is raised by plaintiff's motion to dismiss claims asserted by defendant as cross-claims and counterclaims. It is whether the circular ownership of stock among the companies involved in this litigation violates Section 160(c) of our general corporation law. Stated generally, Section 160(c) prohibits the voting of stock that belongs to the issuer and prohibits the voting of the issuer's stock when owned by another corporation if the issuer holds, directly or indirectly, a majority of the shares entitled to vote at an election of the directors of that second corporation.

Plaintiff is Marvin Speiser, the owner of 50% of Health Med's common stock. Mr. Speiser is also president of Health Med and one of its two directors. Named as defendants are the company itself and Leon Baker, who owns the remaining 50% of Health Med's common stock and is Health Med's other director. Because of the particular quorum requirements set forth in Health Med's certificate, Baker, as the owner of the other 50% of Health Med's common stock, is able to frustrate the convening of an annual meeting by simply not attending. Thus, the need for the Section 211 action.

Despite the admission of facts constituting a *prima facie* case under Section 211, Baker asserts that a meeting should not be ordered. He contends, in a pleading denominated as "Second Affirmative Defense and Cross-Counterclaim" (hereafter simply the counterclaim), that the meeting sought is intended to be used as a key step in a plan by Mr. Speiser to cement control of Health Med in derogation of his fiduciary duty to Health Med's other shareholders. For his part, to thwart an allegedly wrongful scheme Baker seeks a declaratory judgment that shares of another Delaware corporation—Health Chem (hereafter "Chem") —held by Health Med may not be voted by Health Med. The prohibition of Section 160(c) is asserted as the legal authority for this affirmative relief.

I conclude that Mr. Speiser is now entitled to judgment on his claim seeking to compel the holding of an annual meeting by Health Med, but that plaintiff's motion to dismiss the counterclaim must be denied. The legal reasoning leading to these conclusions is set forth below, after a brief recitation of the admitted facts.

I.

The facts of the corporate relationships involved here are complex even when simplified to their essentials.

There is involved in this case a single operating business—Chem, a publicly traded company (American Stock Exchange). On its stock ledger, Chem's stockholders fall into four classes: the public (40%), Mr. Speiser (10%), Mr. Baker (8%) and Health Med (42%). In fact, however, Health Med is itself wholly owned indirectly by Chem and Messrs. Speiser and Baker. Thus, the parties interested in this matter (as owners of Chem's equity) are Speiser, Baker and Chem's public shareholders.

How the circular ownership here involved came about is not critical for present purposes. What is relevant is that Chem (through a wholly owned subsidiary called Medallion Corp.) owns 95% of the equity of Health Med[1]. However, Chem's 95% equity ownership in Health Med is not represented by ownership of 95% of the current voting power of Health Med. This is because what Chem owns is an issue of Health Med convertible preferred stock which, while bearing an unqualified right to be converted immediately into common stock of Health Med representing 95% of Health Med's voting power, in its present unconverted state, carries the right to only approximately 9% of Health Med's vote. In its unconverted state the preferred commands *in toto* the same dividend rights (i.e., 95% of all dividends declared and paid) as it would if converted to common stock.

Speiser and Baker own the balance of Health Med's voting power. Each presently votes 50% of Health Med's only other issue of stock, its common stock.

---

1. Health Med's stock interest in Chem is treated as treasury stock on Chem's books.

This structure may be grasped most easily through a graphic presentation.

OWNERSHIP OF VOTING STOCK
HEALTH MED & HEALTH-CHEM

NOTES:

(1) Ownership interests are approximate.

(2) Holdings in Health-Chem exceed 100% because Speiser and Baker holdings reflect assumed exercise of options.

* When Medallion holding is converted.

** If Health Med Stock is disqualified.

This circular structure was carefully constructed as a means to permit Messrs. Speiser and Baker to control Chem while together owning less than 35% of its equity. It has functioned in that way successfully for some years. Speiser has served as president of all three corporations. When Speiser and Baker's mutual plan required shareholder votes, Speiser apparently directed the vote of Health Med's holdings of Chem stock (its only substantial asset) in a way that together with the vote of Speiser and Baker's personal Chem holdings, assured that their view would prevail.

The conversion of Chem's (Medallion's) preferred stock in Health Med would result in the destruction of the Baker-Speiser control mechanism. Under Section 160(c) of the Delaware corporation law (quoted and discussed below), in that circumstance, Health Med would certainly be unable to vote its 42% stock interest in Chem. As a

result, the other shareholders of Chem (i.e., the owners of the real equity interest in Chem) would have their voting power increased to the percentages shown on the above chart, that is, the voting power of the public stockholders of Chem would increase from 40% to 65.6%.

For reasons that are not important for the moment, Speiser and Baker have now fallen out. Control of Health Med and the vote of its Chem stock thus has now become critical to them. Mr. Speiser, by virtue of his office as President of Medallion and of Health Med, is apparently currently in a position to control Health Med and its vote. Baker asserts, not implausibly, that Speiser now seeks a Health Med stockholders meeting for the purpose of removing Baker as one of Health Med's two directors in order to remove his independent judgment from the scene.

None of Chem's public shareholders have heretofore complained that the failure to convert Chem's (Medallion's) preferred stock in Health Med to common constituted a wrong. Several shareholders have, however, now moved to intervene in this action and asked to be aligned with Mr. Baker. This application is resisted by Mr. Speiser—who asserts some estoppel arguments personal to Mr. Baker as a ground for dismissing Bakers counterclaim.[2]

## II.

Despite defendant Baker's pleading, which intermingles aspects of his affirmative defense to the Section 211(c) claim with elements of his affirmative claim for declaratory relief, I believe the two issues raised by this motion can most appropriately be analyzed independently. The allegedly wrongful control of *Chem* that is at the center of the claim for affirmative re-

lief is not a matter that will be voted upon at (nor be significantly affected by) a Health Med stockholder meeting. The Section 160 claim is not that Chem (Medallion) ought not to be permitted to vote *its* stock at a Health Med meeting, but that Health Med is precluded from exercising rights as a Chem shareholder. Thus, while the two claims are factually related, they are, in my opinion, essentially independent claims legally. I therefore analyze them separately and turn first to Speiser's motion for judgment on the pleadings with respect to his Section 211(c) claim.

Section 211(b) of our corporation law contains a mandatory requirement that every Delaware corporation "shall" hold an "annual meeting of stockholders ... for the election of directors." Section 211(c) confers authority upon this court to order that such an annual meeting be convened when a plaintiff demonstrates that (1) he is a shareholder of the company and (2) no annual meeting has been held within 30 days of the date designated therefor or, if no date had been set, for 13 months since the last annual meeting. Proof of these two statutory elements has been said to constitute a *prima facie* case for relief. *Saxon Industries, Inc. v. NKFW Partners,* Del. Supr., 488 A.2d 1298 (1984).

Given the central role of the shareholders' annual meeting in the scheme of corporate governance contemplated by Delaware law, it is not surprising that once these statutory elements have been shown, the cases have recognized that the right to an order compelling the holding of such a meeting is "virtually absolute." *Coaxial Communications, Inc. v. CNA Financial Corp.,* Del.Supr., 367 A.2d 994 (1976); *Prickett v. American Steel and Pump Corporation,* Del.Ch., 251 A.2d 576 (1969).

---

**2.** The application of the public shareholder to intervene will, I would think, be granted. Those persons have an obvious interest in this matter and to the extent defenses to the counterclaim personal to Mr. Baker have been raised, the intervenors' presence may be necessary to fully protect their interests. *See* Chancery Court Rule 24(a). In any case, if the proposed intervenors are in fact Chem stockholders, I see no reason to deny the application even if it were deemed to be governed by the standards of permissive intervention. *See* Chancery Court Rule 24(b). The situation is not too dissimilar from that treated in *Campbell v. Loew's, Inc.,* Del.Ch., 136 A.2d 191, 192 (1957). However, plaintiff should be provided an opportunity to take limited discovery on this motion should they wish to do so. Therefore, I will not formally rule on the intervention application now; but, for purposes of mooting the estoppel claim, I assume that it will be granted.

Since, however, the statutory language of Section 211(c) is permissive, not mandatory ("... the Court of Chancery may summarily order a meeting to be held ..."), the statute itself would seem to contemplate the possibility of a *prima facie* case being defeated. While the Supreme Court has acknowledged such a possibility as a general matter, *see Saxon Industries, supra* at 1301, no Delaware case actually declining to compel a meeting once the statutory elements have been proven has been cited. Thus, the question here is whether facts have been pleaded which, if true, would establish this as that rare instance in which relief should be denied to plaintiff establishing a *prima facie* case under Section 211(c).

■ In addressing this question, the task is to evaluate the legal sufficiency of the facts alleged while ignoring wholly conclusory statements. *Schleiff v. Baltimore & O.R.R.,* Del.Ch., 130 A.2d 321 (1957); 5 Wright & Miller, Federal Practice and Procedure § 1368 at p. 692. Of course, on such a motion, the non-moving party is entitled to the benefit of any inferences that may fairly be drawn from his pleading. The motion should not be granted unless it appears to a reasonable certainty that under no set of facts that could be proven under the allegations of the Answer would plaintiff's *prima facie* claim be defeated. *Cf. Harman v. Masoneilan International, Inc.,* Del.Supr., 442 A.2d 487 (1982).[3]

Two affirmative defenses are alleged. The first is as follows:

> 17. Plaintiff is estopped from prosecuting this action by reason of the fact that he caused, participated in and acquiesced in the conduct complained of in the Complaint.

I take this to mean that Speiser acquiesced in the failure of Health-Med to hold an annual meeting for several years. Alterna-

tively, it may mean that Speiser acquiesced in the creation of a quorum requirement (a majority of each class of stock) that, in effect, gives both Baker and Speiser the practical power to prevent the convening of a meeting. Accepting as true the factual assertion that Speiser acquiesced in both respects, the question arises whether either such action constitutes a defense to the *prima facie* case that here has concededly been made out. I cannot believe so.

■ In the light of the compulsory nature of the requirement for an annual meeting, *see* 8 *Del.C.* § 211(b), it would require a powerful equity for this court to fail to act when a shareholder satisfies the statutory elements of a claim under Section 211(c). Mere acquiescence in the failure to hold earlier meetings, or indeed actual connivance to avoid earlier meetings, ought not, in my opinion, deprive shareholders generally of the right to elect directors at an annual meeting. *Compare In Re Potter Instrument Co.,* 593 F.2d 470 (2d Cir. 1979).

The second basis alleged in the answer for denying the relief sought by Speiser is that the meeting sought is a step in a plan to remove Baker from office and, thus, to secure to Speiser complete control of Health Med and, through it, Chem. This is said to be inequitable, to give rise to "unclean hands" and to involve a breach of fiduciary duty to *Chem.* While the pleading raising this defense relates principally to the Section 160 counterclaim discussed below, it is asserted as having some relevance to plaintiff's Section 211 claim as well. It is summarized in paragraph 18 of Baker's pleading:

> 18. The meeting of stockholders of Health Med sought by the complaint herein is not sought for any lawful purpose or interest of Health Med, but is, upon information and belief, sought as a further step in an unlawful scheme by

---

**3.** It may be, given the statutory nature of the claim asserted and the special statutory language contained in Section 211(c) ("If there be a failure to hold the annual meeting ... the Court of Chancery may *summarily* order a meeting ... upon application of any stockholder."), that in order to withstand a motion for judgment on the pleadings (or a motion to strike an affirmative defense) a more restrictive test, a test requiring greater factual specificity in the pleadings, would be appropriate in this context. The legislative concern for judicial speed in this particular setting would seem to justify such an approach.

plaintiff Speiser to arrogate to himself absolute control of Health-Chem, whose equity securities are the only assets of Health Med, in violation of Section 160(c) of the Delaware General Corporation Law and in derogation of the rights of the stockholders of Health-Chem other than Speiser and his family.

The facts alleged to flesh out this conclusory statement do state a claim, as I hold below, for relief, but what seems clear is that they allege no wrong to Health Med or its shareholders that will occur by reason of the holding of Health Med's annual meeting statutorily required by subsection (b) of Section 211. All that is really alleged with respect to Health Med is that Baker will likely be voted out of office as a Health Med director and the company will fall under the complete domination of Speiser. The answer to that, of course, is if the votes entitled to be cast at the meeting are cast so as to obtain that result, so be it. Surely Speiser *qua* Health Med shareholder is entitled to so vote. That the Chem (Medallion) 9% vote will be cast against Baker (as very likely as it seems) would not be a reason to enjoin the meeting [4] and cannot be a reason to excuse compliance with the command of Section 211(b).

Accordingly, I conclude that Baker has not alleged facts which, if proven, would show this to be that theoretically possible case in which a *prima facie* case under Section 211(c) is defeated by the existence of a supervening equity counseling the withholding of the remedy authorized by that statute.

### III.

I turn now to Speiser's motion to dismiss the counterclaim seeking a declaratory judgment that Health Med may not vote its 42% stock interest in Chem. The prohibition contained in Section 160 of our corporation law is asserted as the principal basis for such relief.

The pertinent language of the statute is as follows:

Shares of its own capital stock belonging to the corporation or to another corporation, if a majority of the shares entitled to vote in the election of directors of such other corporation is held directly or indirectly, by the corporation, shall neither be entitled to vote nor counted for quorum purposes.

Baker's argument is that the Chem stock owned by Health Med is disabled by this statute from voting because Chem controls Health Med through its unconditional present right to convert its Health Med preferred to a 95% interest in Health Med's common stock. For present purposes, I, of course, accept this allegation as true. In expressing this argument in statutory terms, Baker argues that the unconditional power to convert its preferred stock to a controlling interest in Health Med's common stock and thus become the owner of a majority of the stock entitled to vote in an election of directors of Health Med, itself constitutes "indirect" ownership by Chem of a "majority of the shares entitled to vote in an election of directors" of Health Med. Baker also supports this interpretation with arguments concerning the policy of the statute and claims of violation of fiduciary duty.

Mr. Speiser, for his part, claims that a literal, and a fair, reading of the statutory words that Baker relies upon cannot support his argument. Speiser's counter-argument focuses on just what stock is "entitled to vote" and argues that unless and until the preferred stock is converted, it has the legal attributes of preferred stock and not of any other security into which it may later be transmuted. In its present state, it is clear that the preferred can cast only 9% of the vote at the election of directors of Health Med. Thus, it is argued that the literal language of Section 160(c) compels the conclusion that the voting

---

**4.** In an analogous setting, this court has repeatedly recognized that it will interfere with the taking of a vote at a shareholders' meeting only with the greatest reluctance. *See, e.g., Campbell v. Loew's, Inc.,* Del.Ch., 134 A.2d 565, 567 (1957); *Lenahan v. National Computer Analysts Corp.,* Del.Ch., 310 A.2d 661, 664 (1973); *Initio Partners v. Tandycrafts, Inc.,* Del.Ch., C.A. No. 8697, Hartnett, V.C. (Nov. 10, 1986) [Available on WESTLAW, DE–CS database].

structure of these companies does not violate that statute.

Speiser's argument is cogent. It is a literal argument, but I do not criticize it for that.[5] As a general matter, those who must shape their conduct to conform to the dictates of statutory law should be able to satisfy such requirements by satisfying the literal demands of the law rather than being required to guess about the nature and extent of some broader or different restriction at the risk of an *ex post facto* determination of error. The utility of a literal approach to statutory construction is particularly apparent in the interpretation of the requirements of our corporation law— where both the statute itself and most transactions governed by it are carefully planned and result from a thoughtful and highly rational process.

 Thus, Delaware courts, when called upon to construe the technical and carefully drafted provisions of our statutory corporation law, do so with a sensitivity to the importance of the predictability of that law. That sensitivity causes our law, in that setting, to reflect an enhanced respect for the literal statutory language. *See, e.g., Orzeck v. Englehart,* Del.Supr., 195 A.2d 375 (1963); *Federal United Corp v. Havender,* Del.Supr., 11 A.2d 331 (1940); *Field v. Allyn,* Del.Ch., 457 A.2d 1089 (1983); *Providence & Worcester Co. v. Baker,* Del. Supr., 378 A.2d 121 (1977). When the task is to construe the meaning of reasonably precise words contained in our corporation statute, such as "entitled to vote," our preference, generally, must be to accord them their usual and customary meaning to persons familiar with this particular body of law.

 The statutory language of Section 160(c) which Baker relies upon, when read literally does not, in my opinion, proscribe the *voting* of Health Med's stock in Chem. That is, I cannot conclude that Chem (or its Medallion subsidiary) presently "holds," even indirectly, a majority of the stock

"entitled to vote" in Health Med's election of directors. The stock entitled to vote in such an election, and the extent of its voting power, is technically defined in Health Med's certificate of incorporation. In its unconverted state, Medallion's holding of preferred simply does not represent a majority of the voting power of Health Med.

However, acceptance of Speiser's argument does not end the matter. The clause the parties argue over, even when read as Speiser reads it, does not purport to confer a right to vote stock not falling within its literal terms; it is simply a restriction. More importantly, other statutory words may be read to extend Section 160(c) prohibition to the voting of Health Med's Chem holdings. Specifically, the principal prohibition of the statute is directed to shares of its own capital stock "belonging to the corporation." This phrase is not a technically precise term whose literal meaning is clear; it requires interpretation. I turn then to the analysis of these statutory words that leads me to conclude that they do reach the facts pleaded in the counterclaim.

### A.

 First a word on the function of courts when interpreting statutes. While it is our responsibility to accord to clear and definite statutory words their ordinary meaning, the process of interpretation cannot be—and has never been—entirely a dictionary-driven enterprise. Words themselves are imperfect and ambiguous symbols and the human imagination that shapes them into legal commands is inevitably unable to foresee all of the contexts in which the problem addressed will later arise. Thus, in construing a statute:

> There is no surer guide ... than its purpose when that is sufficiently disclosed; nor any surer mark of oversolicitude for the letter than to wince at carrying out that purpose because the words do not formally quite match with it.

**5.** Some commentators have thought some of the case law of this state unduly literal. For example, Professor Buxbaum has referred to *Providence & Worcester Co. v. Baker,* Del.Supr., 378 A.2d 121 (1977) as: "an opinion startling in its literalness even for Delaware." Buxbaum, *The Internal Division of Powers in Corporate Governance,* 73 Calif.L.Rev. 1671, 1694 (1985).

*Federal Deposit Insurance Corp. v. Tremaine*, 133 F.2d 827, 830 (2d Cir.1943) (L. Hand, J.). A due respect for the legislative will requires a sympathetic reading of statutes designed to promote the attainment of the end sought. *See Magill v. North American Refractories Company*, Del. Supr., 128 A.2d 233 (1956). Over four hundred years ago, Lord Coke gave guidance to English judges engaged in the process of statutory interpretation that is sound today:

> The office of all Judges is always to make such construction as shall suppress the mischief and advance the remedy, and to suppress subtle inventions and evasions for continuance of the mischief ... and to add force and life to the cure and remedy according to the true intent of the makers of the Act....

*Heydon's Case*, 3 Co.Rep. 7a, 76 Eng.Rep. 637 (King's Bench 1584).

Following this sensible advice, we then begin our inquiry into what the legislature meant and intended by the words "belonging to," as used in Section 160(c), by a historical inquiry into the purposes meant to be served by Section 160(c) and statutes like it. This history is particularly instructive here because it demonstrates, I believe, that the very evil the statute sought to address is present here.

### B.

Almost from the earliest stirrings of a distinctive body of law dealing with corporations, courts have been alert to the dangers posed by structures that permit directors of a corporation, by reason of their office, to control votes appertenant to shares of the company's stock owned by the corporation itself or a nominee or agent of the corporation. *See Ex Parte Holmes*, N.Y.Sup.Ct., 5 Cow. 426 (1826); *In the Matter of Barker*, N.Y.Supr.Ct., 6 Wend. 509, 10 N.Y.Com.L.Rpt. 508 (1828); *Brewster v. Hartley*, Cal.Supr., 37 Cal. 15 (1869); *Monsseaux v. Urquhart*, La.Supr., 19 La. Ann. 482, 30 La. 362 (1867); *American Railway—Frog Co. v. Haven*, Mass.Supr., 101 Mass. 398 (1869); *Allen v. De Lager-*

*berger*, Ohio Super., 10 Ohio Dec.Rep. 341 (1888).

The rule that finds its first expression in these cases can be said to be of common law origin in the sense that it arose as a judicial gloss on the statutory right to vote shares. The reason for the rule is not mysterious. Such structures deprive the true owners of the corporate enterprise of a portion of their voice in choosing who shall serve as directors in charge of the management of the corporate venture. Chief Justice Taft, while still an Ohio trial court judge, stated the rationale succinctly in 1888:

> The power to vote is a power incident to ownership of stock, but to allow the directors acting for the corporation to vote the stock would not be distributing the power equally among the stockholders, as the dividends are distributed equally amongst them by payment into the treasury of the company, and it would be entrusting to persons in power the means of keeping themselves in power.

*Allen v. De Lagerberger*, 10 Ohio Dec.Rep. 341 (1888).

The earliest reported American decision on the point was even more succinct:

> It is not to be tolerated that a Company should procure stock in any shape which its officers may wield to the purposes of an election; thus securing themselves against the possibility of removal.

*Ex Parte Holmes*, N.Y.Sup.Ct., 5 Cow. 426, 435 (1826).

As the country experienced a movement in the latter part of the 19th century towards comprehensive general laws of incorporation, the rule came to be expressed in those statutes. The first general incorporation law of this State of which I am aware, the Act of 1883, contained such a prohibition. *See* 17 Del. Laws 212, 225 (1883). The predecessor of our present general corporation law statute, first adopted in 1899, contained an expression of the rule typical for that period:

> Section 24. Shares of stock of the corporation belonging to the corporation

shall not be voted upon directly or indirectly.

21 Del. Laws 453 (1899).

The nineteenth century cases on this subject dealt with a variety of schemes through which a corporation could control the voting of its own stock: trusts (*Ex Parte Holmes, supra*), agency (*Monsseaux v. Urquhart, supra; American Railway-Frog Co. v. Haven, supra*) and pledges (*Brewster v. Hartley, supra*). The attempted use of a subsidiary for that purpose, however, was not treated during that period because, until very late in the century, corporations generally had no power to own stock in other corporations. 6A W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 2825 (rev. perm. ed. 1981). But, with the amendment of the New Jersey corporation law in 1896 to permit holding company structures (*see State v. Atlantic City & S.R. Co.*, N.J.Ev. & Apps., 72 A. 111 (1909)) and the 1899 emulation of that statute in Delaware (*see Chicago Corp. v. Munds*, Del.Ch., 172 A. 452, 454 (1934)) the mischief addressed by Section 160(c) and its predecessors became feasible through the use of a separate corporation. The leading case dealing with this manifestation of the problem arose in Delaware in 1934. That case—*Italo Petroleum Corp. v. Producers Oil Corp.*, Del.Ch., 174 A. 276—construed a version of the statutory prohibition not materially different from the section of the 1899 Act quoted above. Chancellor Wolcott there rejected the argument that stock belonging to a 99% owned subsidiary was not stock "belonging to the [parent] corporation" because it was owned legally by the subsidiary. Thus, he construed the statutory prohibition against voting (directly or indirectly) stock belonging to the corporation as a prohibition against voting stock belonging (directly or indirectly) to the corporation. In so holding, this court was motivated by the same concerns that underlay the pre-statute cases and the statutory codification itself:

> It seems to me to be carrying the doctrine of distinct corporate entity to an

unreasonable extreme to say that, in a contest over control of a corporation those in charge of it should be allowed to have votes counted in their favor which are cast by a subsidiary stockholder wholly owned, controlled, dominated and therefore dictated to by themselves as the spokesmen of the parent.

*Italo Petroleum Corp. v. Producers Oil Corp., supra* at 279.

The statutory language construed in *Italo* remained substantially unchanged until 1967 when a version similar to the current version of Section 160(c) was enacted.[6] 56 Del. Laws 50 (1967). One knowledgeable commentator has referred to the 1967 amendment as codifying the result of *Italo Petroleum*. Folk, *The Delaware General Corporation Law* at p. 159 (1972). Actually, it did that and something more; it specified instances in which stock owned by a subsidiary would be conclusively presumed to be stock "belonging to" its parent. The critical question is, however, did the 1967 amendment intend to do the obverse? Did it intend to create a conclusive statutory presumption that, in no event would stock owned by another corporation that did not satisfy the new test (a majority of shares entitled to vote, etc.) be deemed to be stock "belonging to the corporation?"

There is no hint in the legislative words that such a result was intended and I think that (given the surprising fact that the underlying problem can—as this case attests—arise in situations in which the parent does not hold a majority of the stock entitled to vote at the election of the subsidiary's directors) the policy of the statute would require a clear expression of such an intention before it could be found. Moreover, there seems slight reason relating to the purpose of the statute for the legislature to have intended to create a safe harbor for entrenchment schemes implemented through the use of corporate subsidiaries while leaving all other agencies through which such plans could be executed gov-

---

**6.** The 1967 version did not include the "directly or indirectly" language, which was restored in 1970. *See* 57 Del. Laws, Ch. 649 (1970).

erned by the general language "belonging to."

■ Accordingly, attempting to read these words in a sensible way consistent with the underlying purpose of the enactment, I conclude that stock held by a corporate "subsidiary" may, in some circumstances, "belong to" the issuer and thus be prohibited from voting, even if the issuer does not hold a majority of shares entitled to vote at the election of directors of the subsidiary.

### C.

■ Assuming the truth of the facts alleged in the counterclaim, I am of the view that this is such a case. Here the substantial ownership of Chem in Health Med is not simply large, it is—at 95%—practically complete. The difference in that regard between this case and *Italo Petroleum* is modest and cannot be regarded as material. Here, as there, the parent is required, by generally accepted accounting rules, to treat the subsidiary's stock ownership as treasury shares on its own books. While those principles do not serve as a substitute for legal analysis, they are expertly fashioned rules designed to reflect financial reality. Where GAAP principles require a parent to account for stock as treasury shares, I would think a corporation would have a difficult task in persuading a disinterested court that those shares ought not to be deemed to belong to it for purposes of Section 160(c).

The facts alleged exemplify the very problem Section 160(c) was intended to resolve. That is, here the capital of one corporation (Chem) has been invested in another corporation (Health Med) and that investment, in turn, is used solely to control votes of the first corporation. The principal (indeed the sole) effect of this arrangement is to muffle the voice of the public shareholders of Chem in the governance of Chem as contemplated by the certificate of incorporation of that corporation and our corporation law. In purpose and effect the scheme here put in place is not materially different from the schemes repeatedly struck down for more than one

hundred fifty years by American courts. *See, e.g., Italo Petroleum Corp. v. Producers Oil Corp.*, Del.Ch., 174 A. 276 (1934) and cases cited *supra* p. 1009.

For the foregoing reason, the motion to dismiss the counterclaim will be denied.

### D.

Another independent reason exists for denying Speiser's motion to dismiss.

While I have said that courts interpreting the meaning of our technical corporation law statute have a particular sensitivity to the utility of a technical and literal interpretation of that law when the words chosen are reasonably specific and clear, our law is the polar opposite of technical and literal when the fiduciary duties of corporate officers and directors are involved. *See generally, Revlon v. MacAndrews & Forbes Holdings, Inc.*, Del.Supr., 506 A.2d 173 (1985); *Weinberger v. UOP*, Del.Supr., 457 A.2d 701 (1983); *Singer v. Magnavox*, Del.Supr., 380 A.2d 969 (1977); *Guth v. Loft*, Del.Supr., 5 A.2d 503 (1939). In that setting, technical matters are brushed aside so that the fairness of the underlying reality may be assessed. The facts alleged in the counterclaim properly invoke this more searching level of review.

■ Here the counterclaim alleges facts which, if true, establish that Mr. Speiser is in control of Health Med and through it, of Chem. By reason of that fact, he is placed under a duty to exercise the power of his various offices only for the benefit of the involved corporation and its shareholders and not for his personal benefit. In my opinion, the counterclaim alleges facts which, if true, constitute a breach of the duty of loyalty that Mr. Speiser owes to the shareholders of Chem. Most pointedly, it is a fair inference from the facts alleged that no corporate purpose of Chem is served by the failure of Chem to cause Medallion to convert its preferred stock in Health Med to common stock. Indeed, it is alleged that:

Speiser's ... use of the voting power of Medallion to vest absolute control over Health-Chem in himself is an unlawful

manipulation of Health-Chem's corporate machinery to advance Speiser's personal interests.

It is, of course, elementary that the legal power of Chem and its Medallion subsidiary to convert or fail to convert its Health-Med preferred is subject to an overriding duty, recognized in equity, to act or fail to act only in a way consistent with the fiduciary duty of loyalty that Chem's board owes to the shareholders of that company. *See Weinberger v. UOP*, Del.Supr., 457 A.2d 701 (1983); *Sterling v. Mayflower Hotel Corp.*, Del.Supr., 93 A.2d 107 (1952).

It seems clear that the only function served by permitting the Health Med preferred to remain outstanding, as preferred, is to perpetuate a control mechanism that has the effect of depriving the public shareholders of Chem—the only operating company involved—of the power to elect a board not endorsed by Mr. Speiser (or both Speiser and Baker while they remained in cahoots). That can only be a valid interest of Chem on the supposition that Mr. Speiser knows better than do the other shareholders who should manage the enterprise. That may be reasonable, but it is irrelevant; Chem's certificate of incorporation distributes voting power equally among holders of its common stock not according to any other theory. Should the shareholders wish freely to confer upon certain holders of its stock dominant power in the election of directors, there are ways in which that may be done. *See, e.g., Lacos Land Co. v. Arden Group, Inc.*, Del.Ch.,

517 A.2d 271 (1986). But, unless the shareholders express their will to structure the governance of their enterprise in that fashion, it is hard to imagine that a valid corporate purpose is served by perpetuating a structure that removes from the public shareholders the practical power to elect directors other than those supported by management.

Thus, as I read the counterclaim, it alleges a valid claim of breach of fiduciary duty owed by Speiser to the shareholders of Chem. If proven, that claim could result, minimally, in a mandatory injunction requiring Chem to convert the Health Med preferred into common, in which event the terms of Section 160(c) would, even under Speiser's interpretation of that statute, clearly prohibit the voting by Health Med of its 42% holding in Chem.

### IV.

For the foregoing reasons, plaintiff's motion for judgment on the pleadings with respect to the Section 211(c) claim will be granted and his motion to dismiss Baker's counterclaim will be denied.

IT IS SO ORDERED.