# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

GREENSTAR IH REP, LLC and     :
GARY SEGAL,     :
    :
       Plaintiffs,     :
    :
       v.     :     **C.A. No. 12885-VCS**
    :
TUTOR PERINI CORPORATION,     :
    :
       Defendant.     :
    :
_____     :
    :
TUTOR PERINI CORPORATION,     :
    :
       Counterclaimant,     :
    :
       v.     :
    :
GARY SEGAL,     :
    :
       Counterclaim-Defendant.     :

## MEMORANDUM OPINION

Date Submitted:  July 31, 2017
Date Decided:  October 31, 2017

Kenneth J. Nachbar, Esquire and Lauren Neal Bennett, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware, and Ira Lee Sorkin, Esquire and Amit Sondhi, Esquire of Mintz & Gold LLP, New York, New York, Attorneys for Plaintiff/Counterclaim-Defendant Gary Segal.

Brian C. Ralston, Esquire, Aaron R. Sims, Esquire, and Kwesi Atta-Krah, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware, and Nomi L. Castle, Esquire and Matthew J. Luce, Esquire of Castle & Associates, PLC, Beverly Hills, California, Attorneys for Defendant/Counterclaimant Tutor Perini Corporation.

**SLIGHTS, Vice Chancellor**

This action arises out of the sale of GreenStar Services Corporation ("Greenstar") to Tutor Perini Corporation ("Tutor Perini") in 2011 (the "Acquisition"). The merger and acquisition agreement that memorialized the Acquisition, dated July 1, 2011 (the "Merger Agreement""), provided Plaintiff, Greenstar IH Rep, LLC ("IH Rep"), in its capacity as interest holder representative, a right to receive post-closing earn-out consideration from Tutor Perini in the event certain pre-tax profit milestones were achieved. Tutor Perini made Earn-Out Payments in the First and Second Earn-Out Years but declined IH Rep's demand for Earn-Out Payments in the Third, Fourth and Fifth Earn-Out Years.[1] According to Tutor Perini, Gary Segal, Greenstar's former CEO and an Interest Holder under the Merger Agreement, submitted knowingly false information to Tutor Perini that caused Tutor Perini to calculate its Pre-Tax Profit incorrectly. This, in turn, resulted in inflated Earn-Out Payments to IH Rep.

IH Rep has brought an eight-count complaint against Tutor Perini in which it seeks damages and declaratory judgments relating *inter alia* to Tutor Perini's failure to make Earn-Out Payments as required by the Merger Agreement. Segal joined in the complaint to seek declaratory relief with respect to the arbitrability of certain controversies between the parties that have arisen following the sale of Greenstar.

---

[1] All capitalized terms will either be expressly defined herein or follow the definitions assigned in the Merger Agreement. Verified Compl. ("Compl.") Ex. A ("Merger Agmt.").

The Court resolved the arbitrability issues by Memorandum Opinion dated February 23, 2017.[2] Thus, all that remains of the complaint are IH Rep's claims of breach under the Merger Agreement.

Tutor Perini's answer raises thirteen affirmative defenses[3] and two counterclaims. Count I of the counterclaims alleges fraud against Segal; Count II asserts a right to offset any harm caused by Segal's fraud against any earn-out payments the Court may declare Tutor Perini owes to IH Rep.

IH Rep has moved for judgment on the pleadings as to Counts I, II and III of its complaint in which it asserts breach of contract claims against Tutor Perini relating to the Earn-Out Payments for the Third, Fourth and Fifth Earn-Out Years (the "Earn-Out Claims"). Segal has moved to dismiss both counts of the counterclaims.

After carefully reviewing the Merger Agreement, and viewing the facts alleged in the light most favorable to Tutor Perini, I have determined that IH Rep is entitled to the Earn-Out Payments it seeks as a matter of law based on the clear and unambiguous terms of the Merger Agreement. I have also determined that Tutor

---

[2] *GreenStar IH Rep, LLC v. Tutor Perini Corp.*, 2017 WL 715922 (Del. Ch. Feb. 23, 2017).

[3] The affirmative defenses, as summarily pled, nearly cover the gamut of cognizable defenses, including failure to state a claim, waiver, unclean hands, lack of standing, lack of jurisdiction, fraud, speculative damages, offset and "all applicable equitable defenses." *See* Def.'s Answer to Pls.' Compl. and Verified Countercl. ("Def.'s Answer") 37–40 (Affirmative Defenses).

Perini is not entitled to offset these payments to IH Rep based on any alleged wrongdoing by Segal. Finally, I am satisfied that Tutor Perini has failed to plead fraud against Segal with the particularity required by our law. Accordingly, the motion for judgment on the pleadings and the motion to dismiss must be granted in their entirety.

## I. BACKGROUND

I have drawn the facts from the well-pled allegations in the pleadings as well as all documents incorporated by reference.[4] As I must for both the motion for judgment on the pleadings and the motion to dismiss, I accept as true the denials and the well-pled facts in Tutor Perini's answer and counterclaims, respectively, and draw all reasonable inferences therefrom.[5]

---

[4] *Cypress Assoc. LLC v. Sunnyside Cogeneration Assoc. Project*, 2007 WL 148754, at *2 n.3 (Del. Ch. Jan. 17, 2007) ("The factual recitations are drawn from the pleadings and the exhibits to the pleadings, in accordance with Rule 12 (c).").

[5] *EMSI Acq., Inc. v. Contrarian Funds, LLC*, 2017 WL 1732369, at *6 (Del. Ch. May 3, 2017); *Cypress Assoc.*, 2007 WL 148754, at *2.

## A. The Parties

Plaintiff, IH Rep, is a Delaware limited liability company representing certain interest holders (the "Interest Holders") under the Merger Agreement.[6] "The Interest Holders have assigned their right to bring this action to IH Rep."[7]

Plaintiff and Counterclaim-Defendant, Gary Segal, is a resident of New York and one of the Interest Holders represented by IH Rep.[8] At the time of the Acquisition, Segal was the Chairman and CEO of Greenstar.[9] He was also the President and CEO of Five Star Electric Corporation ("Five Star"),[10] one of three affiliated companies comprising Greenstar.[11] Upon consummation of the Acquisition, Five Star became a subsidiary of Tutor Perini.[12] Segal remained Five

---

[6] Section 1.01 of the Merger Agreement defines Interest Holders as "Stockholders and SARS Participants." Merger Agmt., at § 1.01. "Stockholders" are defined as "holders of [Greenstar] Stock immediately prior to the Closing Date." *Id.* "SARS Participants" are defined as all Persons who are issued rights under Greenstar's 2010 Appreciation Rights Plan. *Id.*

[7] Compl. ¶ 15; Def.'s Answer ¶ 15.

[8] Pls.' Opening Br. in Supp. of Pls.' Mot. for J. on the Pleadings and Mot. to Dismiss Counts I and II of the Countercl. ("Pls.' Opening Br.") 1.

[9] Def.'s Answer ¶ 16.

[10] Def.'s Answer, Countercl. ¶ 6.

[11] Def.'s Answer ¶ 3. Greenstar consisted of three affiliate companies at the time of the Acquisition: Five Star, WDF, Inc. and Nagelbush Mechanical. Pls.' Opening Br. 1.

[12] Compl. ¶ 59; Def.'s Answer ¶ 59.

4

Star's President and CEO following the Acquisition until Tutor Perini suspended his employment in January 2016.[13]

Defendant, Tutor Perini, is a Massachusetts corporation with its principal place of business in Sylmar, California. It "is a leading international civil and building construction company."[14]

## B. The Relevant Provisions of the Merger Agreement

Under the Merger Agreement, Tutor Perini committed to pay as consideration not only cash at closing but also additional amounts to be distributed to the Interest Holders over a five-year period following the closing (the "Earn-Out Payments").[15] Section 2.14 of the Merger Agreement defines the Earn-Out Payments as:

> an amount equal to 25% of Pre-Tax Profit that exceeds Seventeen Million Five Hundred Thousand Dollars ($17,500,000.00) (the "Yearly Earn-Out Payment"); provided that any Yearly Earn-Out Payment shall not exceed Eight Million Dollars ($8,000,000.00) in the aggregate (the "Yearly Earn-Out Cap"). If it is finally determined that a Yearly Shortfall has occurred, Parent shall pay to the Interest Holders (simultaneously with the payment of the Yearly Earn-Out Payment, if any) the Yearly Excess (if any) from any or all previous Earn-Out Years (to the extent not already paid to the Interest Holders) in an amount

---

[13] Def.'s Answer, Countercl. ¶ 7; *see* Tr. of July 31, 2017, Oral Arg., DI 37 ("Tr.") 64; Compl. Ex. D, Arbitration Demand ¶ 7. Tutor Perini and Segal entered into an employment agreement for an initial period of five years following the Acquisition under which Segal would serve as President and CEO of Five Star. Tutor Perini's Answering Br. in Opp'n to Greenstar IH Rep, LLC's Mot. For J. on the Pleadings and Gary Segal's Mot. to Dismiss Tutor Perini's Verified Countercl. ("Def.'s Opp'n") 7.

[14] Def.'s Opp'n 5.

[15] *See* Merger Agmt., at § 2.14.

equal to such Yearly Shortfall. If it is finally determined that a Yearly Excess has occurred, Parent shall pay to the Interest Holders (simultaneously with the payment of the Yearly Earn-Out Payment, if any) such Yearly Excess in an amount equal to the aggregate Yearly Shortfall from any previous Earn-Out Year (to the extent not already paid to the Interest Holders). [16]

As stated in the definition, the calculation of the Earn-Out Payments depends on Tutor Perini's Pre-Tax Profit.[17] Pre-Tax Profit is defined under the Merger Agreement as:

the profit of the Company and its Subsidiaries . . . prior to reduction for income taxes of the Company and its Subsidiaries for such Earn-Out Term, calculated in accordance with past practices and based upon financial statements (prepared in accordance with GAAP consistently applies) of the Company.[18]

Once Tutor Perini has calculated Pre-Tax Profit, it is required to disclose that amount to IH Rep in a Pre-Tax Profit Report along with supporting work papers.[19] The Merger Agreement then sets forth the process by which the parties are to determine any Earn-Out Payments due based on the Pre-Tax Profit Report:

---

[16] *Id.* at § 2.14(a). Yearly Excess "means, with respect to any Earn-Out Year, the amount, if any, by which the Yearly Earn-Out Payment exceeds the Yearly Earn-Out Cap." *Id.* at § 1.01.

[17] *Id.* at § 2.14(b).

[18] *Id.* at § 1.01 (Pre-Tax Profit definition).

[19] *Id.* at § 2.14(b).

Within ninety (90) days after each twelve-month period in the Earn-Out Term, [Tutor Perini] shall in good faith prepare (or cause to be prepared) and deliver to the Interest Holder Representative a report . . . The Pre-Tax Profit Report and the Pre-Tax Profit for the twelve-month period reflected thereon, shall be binding upon the Interest Holder Representative, Stockholders and Parent upon the approval of such Pre-Tax Profit Report by the Interest Holder Representative or the failure of the Interest Holder Representative to object in writing within thirty (30) days after receipt thereof by the Interest Holder Representative. If the Interest Holder Representative does not agree with the Pre-Tax Profit Report and the calculation of the Pre-Tax Profit stated thereon, and Parent and the Interest Holder Representative cannot mutually agree on the same, then within forty-five (45) days following receipt by the Interest Holder Representative of the Pre-Tax Profit Report, Parent and the Interest Holder Representative shall engage the Neutral Accountant to resolve such dispute.

"In the event a Yearly Earn-Out Payment or Yearly Excess is due but not paid . . . the amount shall accrue interest at a rate of four percent (4%) per annum."[20]

## C. The Earn-Out Payments

Tutor Perini prepared the Pre-Tax Profit Report disclosing $70,440,184 in Pre-Tax Profit for the First Earn-Out Year and $65,570,837 for the Second Earn-Out Year.[21]  Based on those Pre-Tax Profits and the $8 million Yearly Earn-Out Cap, Tutor Perini made Earn-Out Payments of $8 million for the first two Earn-Out Years.[22]  The remainder of the amounts that would otherwise be due but for the

---

[20] *Id.* at § 2.14(f).

[21] Def.'s Answer ¶¶ 31–32.

[22] Def.'s Answer ¶¶ 31–32.

Yearly Earn-Out Cap (approximately $9.25 million) accumulated as Yearly Excess for both of the First and Second Earn-Out Years.

In the Third and Fourth Earn-Out Years, Tutor Perini issued a Pre-Tax Profit Report but did not make Earn-Out Payments.[23] The reported Pre-Tax Profit was $31,564,617 for year three and $43,946,950 for year four.[24] This should have yielded Earn-Out Payments of $8 million in both years.[25] Tutor Perini did not issue a Pre-Tax Profit Report for the Fifth Earn-Out Year nor did it make Earn-Out Payments for that year.[26]

IH Rep calculates that it is owed at least $19,380,646, plus interest, based on the amounts disclosed by Tutor Perini in its Pre-Tax Profit Reports but not paid as Earn-Out Payments.[27] It seeks this amount as damages for breach of contract.

---

[23] Compl. ¶¶ 34, 36–37, 39.

[24] Def.'s Answer ¶¶ 34, 37.

[25] The Earn-Out Payment for year three would have been approximately $3.5 million plus the Yearly Excess of approximately $4.5 million to reach the Yearly Earn-Out Cap of $8 million. The Earn-Out Payment for year four would have been approximately $6.6 million plus the Yearly Excess of approximately $1.4 million to reach the $8 million Yearly Earn-Out Cap. Compl. ¶ 43; Def.'s Answer ¶¶ 34, 37.

[26] Def.'s Answer ¶ 40.

[27] Compl. ¶¶ 12, 70, 76, 82.

## D. The Fraud Allegations

As noted, Segal remained as President and CEO of Five Star following the Acquisition.[28] Tutor Perini alleges that Five Star's finances have a "significant impact" on the Pre-Tax Profit used to determine the Earn-Out Payments and that Segal was or should have been aware of this fact.[29] According to Tutor Perini, to his benefit and Tutor Perini's detriment, Segal exploited his position with Five Star "to cause Five Star to provide inaccurate information for purposes of calculating the Yearly Earn-Out Payments."[30] This alleged inaccurate information included erroneous assumptions regarding the outcome of disputes related to projects in which Five Star was involved with Hudson Yards C-Core & Shell, Baccarat Hotel, and Carnegie 57.[31] Tutor Perini alleges that it relied on the information provided by Segal with respect to these projects when calculating the Pre-Tax Profits it disclosed in the Pre-Tax Profit Reports. This, in turn, caused inflated calculations of earn-out amounts IH Rep has already received and is attempting to extract from Tutor Perini in this action.[32]

---

[28] Def.'s Answer, Countercl. ¶ 9.

[29] Def.'s Answer, Countercl. ¶¶ 10, 16.

[30] Def.'s Answer, Countercl. ¶ 11.

[31] Def.'s Answer, Countercl. ¶¶ 11, 14.

[32] Def.'s Answer, Countercl. ¶¶ 17, 22.

9

### E. Procedural Posture

On March 29, 2017, IH Rep filed this motion for judgment on the pleadings on Counts I, II and III of the Complaint and Segal filed a motion to dismiss the counterclaims. The motion for judgment on the pleadings turns on whether Section 2.14 of the Merger Agreement imposes a condition that the amounts calculated as Pre-Tax Profits and disclosed to IH Rep in the Pre-Tax Profit Reports will be based on accurate financials before they will be binding upon Tutor Perini when calculating Earn-Out Payments. If the answer to this query is yes, then IH Rep is not entitled to judgment on the pleadings because, at the very least, there is a factual dispute regarding the accuracy of the information Tutor Perini relied upon in preparing its Pre-Tax Profit Reports. If the answer is no, meaning the parties did not bargain for an accuracy condition, then IH Rep is entitled to judgment on the pleadings since there is no dispute that Tutor Perini has failed to make the Earn-Out Payments called for based on its Pre-Tax Profit Reports for the Third and Fourth Earn-Out Years, and has failed to prepare a Pre-Tax Profit Report as required for the Fifth Earn-Out Year.

Segal's motion to dismiss Tutor Perini's offset counterclaim presents the question of whether Tutor Perini may deny Earn-Out Payments otherwise due the

Interest Holders to account for Segal's alleged wrongdoing.[33]  While Tutor Perini brings this claim as a counterclaim against Segal, it also raises offset as an affirmative defense to IH Rep's claim of breach relating to the Earn-Out Payments.[34] As for Segal's motion to dismiss the fraud claim, the question quite simply is whether Tutor Perini's allegations of fraud meet the particularity requirements embodied in Court of Chancery Rule 9(b) as interpreted by our courts.  I address each motion in turn below.

## II.    LEGAL ANALYSIS

When a plaintiff brings a motion for judgment on the pleadings under Court of Chancery Rule 12(c), the court generally must accept the non-moving party's denials as fact and must view the facts and reasonable inferences from those facts in

---

[33] *See, e.g.*, Pls.' Opening Br. 16–17 ("[A]ny fraud committed by Segal, a non-party [to the Merger Agreement], would not excuse Tutor Perini's contractual obligations to IH Rep under the Merger Agreement.").

[34] *See* Def.'s Answer 39–40, 47–48.  For the sake of efficiency and clarity, I will follow the parties' lead and address the right to offset in connection with IH Rep's motion for judgment on the pleadings.  *See* Pls.' Opening Br. 16–17 ("[A]ny fraud committed by Segal, a non-party, would not excuse Tutor Perini's contractual obligations to IH Rep under the Merger Agreement."); Def.'s Opp'n 37–47 (limiting its arguments on the motion to dismiss to Segal's motion to dismiss the fraud counterclaim); Pls.' Reply Br. in Further Supp. of Pls.' Mot. for J. on the Pleadings and Mot. to Dismiss Counts I and II of the Countercl. ("Pls.' Reply") 25–26 (IH Rep addressing its argument with reference to the motion for judgment on the pleadings: "Tutor Perini also acknowledges that it could pay the earn-out consideration to IH Rep, and then, if it later secures a judgment against Segal, potentially recover whatever pro rata portion of the earn-out was paid to Segal.").  For the same reasons offset fails as an affirmative defense against IH Rep, it also fails as a counterclaim against Segal.

11

the light most favorable to the non-moving party.[35]  The court is not, "however, required to accept as true conclusory assertions unsupported by specific factual allegations," particularly when those assertions do no comport with the terms of a clear and unambiguous contract.[36]  Indeed, "[j]udgment on the pleadings is a proper framework for enforcing unambiguous contracts because there is no need to resolve material disputes of fact."[37]

Similarly, in considering a motion to dismiss a counterclaim under Court of Chancery Rule 12(b)(6), the court must accept as true the well-pled allegations in the counterclaim and "afford the party opposing the motion the benefit of all reasonable inferences."[38]  As with motions under Rule 12(c), however, the court "need not accept inferences or factual conclusions unsupported by specific allegations of fact."[39]

---

[35] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993).

[36] *Cypress Assoc.*, 2007 WL 148754, at *2–3; *Fiat N. Am. LLC v. UAQ Retiree Med. Benefits Trust*, 2013 WL 3963684, at *7 (Del. Ch. July 30, 2013).

[37] *Lillis v. AT&T Corp.*, 904 A.2d 325, 329 (Del. Ch. 2006) (citing *DeLucca v. KKAT Mgmt.*, 2006 WL 224058, at *6 (Del. Ch. Jan. 23, 2006)).

[38] *MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at *3 (Del. Ch. Dec. 30, 2010).

[39] *Id.* (citing *Ruffalo v. Transtech Serv. P'rs Inc.*, 2010 WL 3307487, at *10 (Del. Ch. Aug. 23, 2010)).

### A. The Earn-Out Payments Under Section 2.14

At the heart of IH Rep's motion for judgment on the pleadings lies Section 2.14 of the Merger Agreement, the detailed provision in which the parties set forth IH Rep's right to Earn-Out Payments and the process by which such payments will be calculated and made. Section 2.14(a) requires Tutor Perini to pay IH Rep an annual amount, defined as the Yearly Earn-Out Payment, of "25% of Pre-Tax Profit that exceeds [] $17,500,000.00[]." The Yearly Earn-Out Payment is not to exceed $8 million annually in the aggregate (the Earn-Out Cap).[40] Section 2.14(a) further requires that, in any year where the Yearly Earn-Out Payment due to IH Rep is less than $8 million, Tutor Perini must pay IH Rep both the Yearly Earn-Out Payment due and any amount of Earn-Out Payments due in previous years that were in excess of the Earn-Out Cap (defined as Yearly Excess) up to the Earn-Out Cap for that year. Specifically, in the event of a Yearly Excess in a particular Earn-Out Year, Tutor Perini "shall pay to the Interest Holders . . . such [excess] in an amount equal to the aggregate [shortfalls] from any previous Earn-Out Year (to the extent not already paid to the Interest Holders)."[41]

Under Section 2.14(b), Tutor Perini must prepare, in good faith, and deliver to IH Rep a Pre-Tax Profit Report (with supporting documents) within ninety days

---

[40] Merger Agmt., at § 2.14(a).

[41] *Id.*

of each twelve-month period in which it discloses the Pre-Tax Profit. "The Pre-Tax Profit Report *and* the Pre-Tax Profit . . . *shall be binding* upon [IH Rep], Stockholders and [Tutor Perini] upon the approval of such Pre-Tax Profit Report *by [IH Rep]* or the *failure of [IH Rep] to object* in writing within thirty (30) days after receipt [of the Report]."[42] In the event IH Rep lodges an objection, the parties are to engage a neutral accountant to resolve any resulting disputes.[43]

Based on Section 2.14's clear and unambiguous terms, IH Rep argues that the amounts disclosed by Tutor Perini as Pre-Tax Profit become binding on all parties if IH Rep approves the Pre-Tax Profit Report or fails to object to the report within thirty days. Since Tutor Perini is not contesting that it calculated and disclosed the Pre-Tax Profit in its Pre-Tax Profit Reports for Earn-Out Years One through Four,[44] and IH Rep did not object to those reports,[45] IH Rep argues that the reports are binding on the parties and provide the bases upon which the Earn-Out Payments in dispute must be calculated. As for the Fifth Earn-Out Year, IH Rep asserts that the

---

[42] *Id.* at § 2.14(b) (emphasis supplied).

[43] *Id.*

[44] Def.'s Answer ¶¶ 31–32, 34, 37.

[45] Pls.' Opening Br. 15; *see* Def.'s Opp'n 33–34 (acknowledging Plaintiffs' assertion that IH Rep did not object to the amounts and not disputing that statement). Neither the Complaint nor Tutor Perini's answer to the Complaint mention any objections to the Pre-Tax Profit Reports or Pre-Tax Profits by IH Rep. Compl. ¶¶ 34–39; Def.'s Answer ¶¶ 34–39; Def.'s Answer, Countercl. ¶¶ 2, 11–12.

14

Merger Agreement clearly requires Tutor Perini to prepare a Pre-Tax Profit Report for that year and that it is entitled to payments in at least the amount of the prior years' Yearly Excess.[46] Once it is determined that Tutor Perini owes the disputed Earn-Out Payments, IH Rep asserts that Tutor Perini cannot then avoid its payment obligations by seeking an offset for fraud allegedly committed by Segal, a nonparty to the Merger Agreement.

Tutor Perini, on the other hand, argues that, while the amounts it disclosed in the Pre-Tax Profit Reports presented its calculations at the time the disclosures were made, the calculations were based on inaccurate information provided by Segal, as Five Star's CEO, and, therefore, cannot bind Tutor Perini.[47] This result, Tutor Perini contends, is supported by the plain language of the Merger Agreement which states that the Earn-Out amounts are to be based on the Pre-Tax *Profits* rather than the Pre-

---

[46] Compl. ¶ 43:

| Year Ending | Pre-Tax Profit Reported by Tutor Perini | Yearly Earn Out Payment | Yearly Excess or (Yearly Shortfall) | Earn Out Due |
|---|---|---|---|---|
| June 30, 2012 | $70,440,184 | $13,235,046 | $5,235,046 | $8,000,000 (paid) |
| June 30, 2013 | $65,570,837 | $12,017,709 | $4,017,709 | $8,000,000 (paid) |
| June 30, 2014 | $31,564,617 | $3,516,154 | ($4,483,846) | $8,000,000 (not paid) |
| June 30, 2015 | $43,946,950 | $6,611,737 | ($1,388,263) | $8,000,000 (not paid) |
| June 30, 2016 | Tutor Perini has not issued Report | | | At Least $3,380,646 Yearly Excess (not paid) |

[47] Def.'s Answer, Countercl. ¶ 11.

15

Tax Profit ***Reports***.  Those Pre-Tax Profits, according to the Merger Agreement's Definitions Section, are to be based on financials prepared in compliance with GAAP and thus free of material inaccuracies.  According to Tutor Perini, the Pre-Tax Profit Reports are merely the means by which it is to inform IH Rep of the Pre-Tax Profits so that IH Rep may determine whether to challenge the amounts disclosed.  Since the profits disclosed in Tutor Perini's Pre-Tax Profit Reports did not reflect Tutor Perini's actual Pre-Tax Profits, those amounts could not be the basis for the Earn-Out Payments contemplated by the Merger Agreement.[48]

Tutor Perini further asserts that, if the Court determines the Merger Agreement does not address the required accuracy of the Pre-Tax Profit calculations with respect to Earn-Out Payments, then the Court should find a gap in the agreement and imply the missing term under the implied covenant of good faith and fair dealing. Tutor Perini supports this argument by again pointing to the definition of Pre-Tax Profit, which, as stated, requires the financials on which the calculations are based to be GAAP compliant.[49]  This, Tutor Perini argues, reveals the parties' intent that the information upon which Earn-Out Payments are calculated will be accurate.

---

[48] "'GAAP' means United States generally accepted accounting principles, consistently applied."  Merger Agmt., at § 1.01.  Since GAAP require financial statements to be "free from material inaccuracies," Tutor Perini argues that accuracy of the Pre-Tax Profit was a requirement under the terms of the Merger Agreement.  *See* Def.'s Opp'n 27–29.

[49] *See* Def.'s Opp'n 27–29.

Finally, Tutor Perini asserts that judgment on the pleadings is inappropriate when its thirteen affirmative defenses and two counterclaims have not yet been adjudicated.

When interpreting a contract, I am bound by the language within the contract unless that language is ambiguous.[50] Stated differently, "the role of a court [in contract construction] is to effectuate the parties' intent. In doing so, [the court is] constrained by a combination of the parties' words and the plain meaning of those words . . . ."[51]

The Merger Agreement, at Section 2.14(a), spells out unambiguously how the Earn-Out Payments for each of the five Earn-Out Years are to be calculated.[52] This calculation is expressly dependent upon Tutor Perini's calculation of Pre-Tax Profit as disclosed in its Pre-Tax Profit Reports.[53] At Section 2.14(b), the parties evidenced their intent to streamline the Earn-Out Payments by agreeing to a process by which they would settle earn-out related disputes in an expedited and extra-judicial

---

[50] *See, e.g.*, *Salamone v. Gorman*, 106 A.3d 354, 369 (Del. 2014).

[51] *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006). *See also In re Viking Pump, Inc.*, 148 A.3d 633, 648 (Del. 2016) ("[C]ourts interpreting a contract will give priority to the parties' intentions as reflected in the four corners of the agreement, construing the agreement as a whole and giving effect to all its provisions.") (quoting *Salamone*, 106 A.3d at 368).

[52] Merger Agmt., at § 2.14(a).

[53] *Id.* at § 1.01 (Pre-Tax Profit definition).

17

manner.[54] If the parties do not invoke this process, then "[t]he Pre-Tax Profit Report *and* the Pre-Tax Profit for the twelve-month period reflected [on the report], *shall be binding* upon the Interest Holder Representative, Stockholders *and Parent*."[55] Thus, reading Section 2.14(a) and Section 2.14(b) together, the terms unambiguously provide that the Pre-Tax Profits Tutor Perini disclosed in its Pre-Tax Profit Reports, having not been disputed, are binding upon *both* IH Rep and Tutor Perini and the required Earn-Out Payments must be calculated and paid from these amounts. To accept Tutor Perini's construction of Section 2.14 would be to render the language "shall be binding" superfluous—a result, under our law, that must be "avoided."[56]

---

[54] *See id.* at § 2.14(b) ("If the Interest Holder Representative does not agree with the Pre-Tax Profit Report and the calculation of the Pre-Tax Profit stated thereon, and Parent and the Interest Holder Representative cannot mutually agree on the same, then within forty-five (45) days following receipt by the Interest Holder Representative of the Pre-Tax Profit Report, Parent and the Interest Holder Representative shall engage the Neutral Accountant to resolve such dispute.").

[55] *Id.* (emphasis supplied). The Preamble to the Merger Agreement defines Tutor Perini as "Parent." *Id.* at Preamble.

[56] *See Seidensticker v. Gasparilla Inn, Inc.*, 2007 WL 4054473, at *3 (Del. Ch. Nov. 8, 2007) ("When interpreting contracts, this Court gives meaning to every word in the agreement and avoids interpretations that would result in 'superfluous verbiage.'"); *iBio, Inc. v. Fraunhofer USA, Inc.*, 2016 WL 4059257, at *5 (Del. Ch. July 29, 2016) ("Contractual interpretation operates under the assumption that the parties never include superfluous verbiage in their agreement, and that each word should be given meaning and effect by the court.") (internal quotation marks omitted).

Tutor Perini's argument that it does not owe Earn-Out Payments whenever it can demonstrate that it calculated Pre-Tax Profits for an Earn-Out Year based on financial statements that were not GAAP compliant fails at the threshold.[57]  Nothing in the Definitions Section reasonably can be read to negate or qualify Section 2.14's mandate that if IH Rep does not object within thirty days of receiving a Pre-Tax Profit Report, the report and the Pre-Tax Profit stated therein are binding on all parties.  Instead, the Definitions Section simply defines how *Tutor Perini* must calculate Pre-Tax Profit—it must do so "in accordance with past practices and based upon financial statements (prepared in accordance with GAAP consistently applied) of the Company."[58]  Section 2.14 makes no reference to this Definition, nor do the express terms of the provision even hint that the parties intended to relieve Tutor Perini of its earn-out obligations in the event Tutor Perini is later able to demonstrate that *it failed* properly to calculate Pre-Tax Profit by relying on inaccurate financial statements that *it prepared*.[59]  What Section 2.14 *does* make clear is that once Tutor

---

[57] *See* Def.'s Opp'n 28–29.

[58] Merger Agmt., at § 1.01 (definitions).

[59] Tutor Perini's construction of Section 2.14 would allow it to avoid the detailed process set forth in that provision, and deprive IH Rep of its right to Earn-Out Payments, even in circumstances where Tutor Perini's own auditors or in-house accountants received accurate inputs but still failed to prepare GAAP compliant financials, and then relied upon those financials to calculate Pre-Tax Profits.  That construction is not reasonable, as it finds no support in the unambiguous language and earn-out scheme set forth in the Merger Agreement.

Perini prepares the Pre-Tax Profit Report, and provides it to IH Rep, if IH Rep does not timely object, the report and the Pre-Tax Profit disclosed therein are "binding."[60]

## B. The Implied Covenant of Good Faith and Fair Dealing

Faced with Section 2.14's unambiguous language, Tutor Perini argues that there is a gap in the Merger Agreement with respect to the accuracy of the Pre-Tax Profits as related to Earn-Out Payments. Accordingly, it urges the Court to imply a term that would require Tutor Perini to make Earn-Out Payments based only on accurate Pre-Tax Profit calculations.[61] This, Tutor Perini argues, would surely have been the agreement of the parties had they considered the issue of accurate Pre-Tax Profit numbers, and any contrary interpretation would be "unreasonable and absurd."[62]

---

[60] *Id.* at § 2.14(b). The binding nature of the Pre-Tax Profit Report serves both parties' interests. If the Pre-Tax Profits do not trigger Earn-Out Payments, Tutor Perini is protected from protracted litigation to the extent IH Rep disagrees with Tutor Perini's calculations (the streamlined arbitration process) or fails to raise a timely objection (no litigation at all). IH Rep, on the other hand, is meant to be protected from precisely what Tutor Perini is attempting to do here – mount a challenge to its own calculation of Pre-Tax Profits and then, on that basis, delay the payment of substantial earn-out consideration.

[61] *See* Def.'s Opp'n 30–31. I note that Tutor Perini did not bring a counterclaim based on the implied covenant, but rather argues that I should consider the implied covenant as a defense in the event I determine the Merger Agreement otherwise requires it to make the Earn-Out Payments at issue here. Tr. 51–53.

[62] Def.'s Opp'n 31.

To be sure, "the implied covenant of good faith and fair dealing attaches to every contract by operation of law and requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain."[63] The covenant exists, however, solely to fulfill the reasonable expectations of the parties; it cannot be employed to circumvent the parties' bargain.[64] Therefore, in order for the implied covenant to apply, the contract's language must not address the obligation asserted and the obligation to be implied must not contradict "the purposes reflected in the express language of the contract."[65] Our courts are reluctant to imply terms based on the covenant of good faith and fair dealing "when a contract easily could have been drafted to expressly provide for [the missing terms]."[66]

---

[63] *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146 (Del. Ch. 2009); *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at *3 (Del. Ch. Jan. 30, 2015) (internal quotation omitted).

[64] *Fortis Advisors*, 2015 WL 401371, at *3 (quoting *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 441 (Del. 2005)) ("Where the contract speaks directly regarding the issue in dispute, "[e]xisting contract terms control . . . such that implied good faith cannot be used to circumvent the parties' bargain, or to create a 'free-floating duty unattached to the underlying legal documents.'"); *Airborne Health*, 984 A.2d at 146 ("[T]he covenant exists to fulfill the reasonable expectations of the parties, and thus the implied obligation must be consistent with the terms of the agreement as a whole.").

[65] *Fortis Advisors*, 2015 WL 401371, at *3.

[66] *Airborne Health*, 984 A.2d at 146; *see also Dunlap*, 878 A.2d at 442 ("This quasi-reformation, however, should be a rare and fact-intensive exercise, governed solely by issues of compelling fairness. Only when it is clear from the writing that the contracting parties would have agreed to proscribe the act later complained of had they thought to

There are no gaps to fill here. Section 2.14 clearly reflects the parties' intent to impose a definitive timeline within which the accuracy of the Pre-Tax Profit, as presented in the Pre-Tax Profit Report, could be challenged.[67] Such challenges are to be brought before a neutral accountant for summary resolution.[68] Had the parties intended to allow Tutor Perini to withhold Earn-Out Payments whenever it believed it had calculated Pre-Tax Profits based on inaccurate information, they easily could (and surely would) have provided such language as part of the bespoke process they agreed to in Section 2.14.[69] They did not. Therefore, I will not imply a term that is inconsistent with the intent of the parties as evidenced by the express terms of the agreement.[70]

---

negotiate with respect to that matter may a party invoke the covenant's protections.") (internal quotation omitted).

[67] *See* Merger Agmt., at § 2.14(b).

[68] *See id.*

[69] *See, e.g.*, *Haase v. Grant*, 2008 WL 372471, at *3 (Del. Ch. Feb. 7, 2008) ("The parties included a restriction that limited defendant's ability to construct beyond a certain square footage on his land. If the parties had intended also to include a restriction on the ability of defendant to construct on his land if such construction would impair plaintiff's ocean view, one reasonably would expect to see this explicitly memorialized and recited in the contract in the form of a contractual term that prohibited obstruction of plaintiff's ocean view. They did not do so, however, and the inclusion of one term restricting defendant's use of his land (by setting the maximum square footage of his house) demonstrates that the parties knew how to refer to and restrict defendant's use of his land if, and when, they so desired.").

[70] Tutor Perini asserts that the motion for judgment on the pleadings must be denied because "there are factual questions related to the accuracy of the Pre-Tax Profit Reports." Def.'s Opp'n 33 (citing *Ballenger v. Applied Digital Solutions, Inc.*, 2002 WL 749162 (Del.

22

### C. Tutor Perini's Affirmative Defenses and the Alleged Offset

In its last breath, Tutor Perini claims that judgment on the pleadings is inappropriate because it has raised thirteen affirmative defenses in its answer and has raised a *bona fide* basis to offset the Earn-Out Payments to account for Segal's fraud. Neither argument is persuasive.

First, contrary to Tutor Perini's argument,[71] IH Rep was not obliged to move for judgment on the pleadings specifically as to the affirmative defenses when moving for judgment as a matter of law under Court of Chancery Rule 12(c).[72] Since

---

Ch. Apr. 24, 2002)). In *Ballenger*, the defendant company asserted that it could not produce financials for the calculation of earn out amounts after discovering certain improprieties in previously disclosed financials. *Id.* at *4. The court determined that a factual question existed as to whether the defendant company should be required to produce earn out financials when it lacked access to the information required to do so. *Id.* at *5. Unlike *Ballenger*, there is no factual dispute as to Tutor Perini's obligation to produce Pre-Tax Profit Reports, at least as to Earn-Out Years One through Four. Those reports were prepared based on information that Tutor Perini, or its affiliates, controlled. *Ballenger* might be apposite if Tutor Perini was alleging that information beyond its control was unavailable to it and that it required this information to prepare Pre-Tax Profit Reports. It has made no such allegation.

[71] Def.'s Opp'n 15–16 ("[IH Rep] conveniently ignored that Tutor Perini alleged thirteen defenses to Plaintiffs' Earn-Out Claims in its Answer. Among these defenses are unclean hands, fraud, offset, and other applicable equitable defenses." "With all thirteen of these defenses pending against the Earn-Out Claims, and without the benefit of a factual record from discovery, it would be premature at this stage of the proceedings to grant judgment on the pleadings with respect to the Earn-Out Claims.").

[72] *See Cypress Assoc.*, 2007 WL 148754 (addressing affirmative defenses in an application for a judgment on the pleadings without a motion for judgment on the pleadings particularly as to those defenses); *Speiser v. Baker*, 525 A.2d 1001, 1006 (Del. Ch. 1987) (granting judgment on the pleadings where the motion did not address the affirmative defenses pled).

Tutor Perini bears the burden of proving its affirmative defenses, in order for those defenses to raise material issues of fact that would preclude judgment on the pleadings, Tutor Perini must support the defenses with more than just summary pleading.[73] The rhythmic incantation of multiple affirmative defenses, each revealed in a single sentence, cannot, alone, defeat an otherwise well-supported motion for judgment on the pleadings.[74]

Moreover, the motion for judgment on the pleadings pertains solely to the Earn-Out Claims brought by IH Rep. As such, the affirmative defenses that rest on

---

[73] *See Cypress Assoc.*, 2007 WL 148754, at *18 ("The [defendant's] answer here makes no attempt to provide that notice, and instead contains mere naked legal conclusions that do not plead facts supporting the viability of its affirmative defense."); *id* at *3 ("I am not, however, required to accept as true conclusory assertions unsupported by specific factual allegations. In moving for judgment on the pleadings, a litigant impliedly admits the truth of its adversary's well-pled allegations and the falsity of its own assertions that have been denied by the adversary. If, after these principles are applied, I conclude that there is no material question of fact and the movant is entitled to judgment as a matter of law, I must grant the motion."); *Medek v. Medek*, 2008 WL 4261017, at *10 (Del. Ch. Sep. 10, 2008) (granting summary judgment on affirmative defenses of laches and waiver when the defendant failed to allege facts sufficient to support the elements necessary for each affirmative defense).

[74] *McMillan v. Intercargo Corp.*, 768 A.2d 492, 500 (Del. Ch. 2000) ("Although all facts of the pleadings and reasonable inferences to be drawn therefrom are accepted as true neither inferences nor conclusions of fact unsupported by allegations of specific facts are accepted as true. That is, a trial court need not blindly accept as true all allegations, nor must it draw all inferences from them in plaintiffs' favor unless they are reasonable inferences.") (citing *In re Lukens Inc. S'holder Litig.*, 757 A.2d 720, 727 (Del. Ch. 1999)) (internal quotation omitted); *see also Cypress Assoc.*, 2007 WL 148754, at *2; *Shechter v. Comptroller of City of New York*, 79 F.3d 265, 270 (2d Cir. 1996) (Affirmative "[d]efenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy.").

24

the conduct of Segal may not be asserted as defenses to claims brought by IH Rep.[75]

To reiterate, Segal is not a party to the Merger Agreement.[76]  Section 2.14 of the

Merger Agreement sets out the rights and obligations of Tutor Perini and IH Rep.[77]

While Segal may have a direct claim under other provisions of the Merger

Agreement, he does not have a direct claim to the Earn-Out Payments from Tutor

---

[75] None of the thirteen affirmative defenses call into question the validity or enforceability of the Merger Agreement.  *See* Def.'s Answer 39–41.  In fact, Tutor Perini admits the validity of the contract in its answer.  *Id.* at ¶ 66.

[76] *See* Merger Agmt., at Preamble (describing the Merger as being between the "Parties" (comprising Greenstar, Tutor Perini, Galaxy Merger, Inc. and IH Rep, in its capacity as Interest Holder Representative); *see also* Def.'s Answering Br. in Opp'n to Pls.' Mot. for J. on the Pleadings, DI 17, 4–5 ("[Segal] is a non-party to the Merger Agreement without standing to assert a claim under that Agreement.").  The parties have disagreed as to whether Segal is a third-party beneficiary of the Merger Agreement.  Indeed, the parties have changed their views on this point depending on whether Segal's third-party beneficiary status might help or hurt their respective legal positions.  *See, e.g.*, DI 17, at 24 (Tutor Perini arguing that Segal is not a party to the Merger Agreement and has no standing to assert claims under it); DI 29, at 18 (Tutor Perini arguing that Segal is a third-party beneficiary of the Merger Agreement and, therefore, his fraud should offset Tutor Perini's earn-out obligations); DI 19, at 9 (Segal arguing that he is a third-party beneficiary of the Merger Agreement); DI 33, at 12 (IH Rep arguing that Segal is a third-party beneficiary of the Merger Agreement, but only for the limited purpose of ensuring that he receives bargained-for indemnification rights).  Like blue painted on black, even if the Court determined that Segal is a third-party beneficiary of the Merger Agreement, that finding would not alter the clear image created by unambiguous contract language.  IH Rep, not Segal, is a party to the Merger Agreement.  IH Rep, not Segal, is entitled to Earn-Out Payments.  IH Rep, not Segal, is entitled to voice objections to the Pre-Tax Profit Reports.  Simply stated, nothing in the Merger Agreement supports the notion that Segal's bad acts, even if well-pled and proven, could serve as a basis to deny the Interest Holders (of which there are many) the right to Earn-Out Payments for which they bargained.

[77] Def.'s Answer ¶ 66 ("The Merger Agreement is a valid, binding contract between Plaintiff IH Rep and Tutor Perini.").  Galaxy Merger, Inc. and Greenstar were also parties to the Merger Agreement.  *Id.*; *see* Merger Agmt.  Their involvement is irrelevant for purposes of this motion.

25

Perini under Section 2.14.[78]  Nor may Tutor Perini throw up Segal's alleged fraud as

a means to avoid its earn-out responsibilities.[79]  Not surprisingly, Tutor Perini has

offered no authority that says otherwise.[80]

---

[78] While Tutor Perini claims that Counts I through III are asserted by both IH Rep and Segal as demonstrated by the Complaint at paragraphs 65–82, Def.'s Opp'n 9, the right to pursue a claim for those payments lies solely with IH Rep.  *See, e.g.*, Def.'s Answering Br. in Opp'n to Pls.' Mot. for J. on the Pleadings, DI 17, 45 ("It is undisputed that Segal is not directly entitled to earn-out payments—as Plaintiffs acknowledge, any earn-out payments under the Merger Agreement must be made to Greenstar Rep and not to the individual Interest Holders, such as Segal."); *see also* Pls.' Opening Br. 3 ("IH Rep is entitled to payment of earn-out consideration based upon [the] binding numbers. Segal is not a party to the Merger."); *id.* at 2 n.1 ("Although Plaintiff IH Rep and Segal both brought claims under the Verified Complaint, pursuant to this Court's February 23, 2017 order [deciding arbitrability and jurisdiction issues], Segal no longer has any claims before this Court.").

[79] To reiterate, this holds true as well for Tutor Perini's counterclaim which asserts a right of offset.  Def.'s Answer, Countercl. ¶¶ 20–24.

[80] *Cf. WSFS v. Chillibilly's, Inc.*, 2005 WL 730060, at *17 (Del. Super. Mar. 30, 2005) (addressing claims for unjust enrichment, the court explained that "where a contract exists no person can be sued for breach of contract who has not contracted either in person or by an agent . . . ."); *Vichi v. Koninklijke Philips Elec. N.V.*, 62 A.3d 26, 59 (Del. Ch. 2012) ("[B]asic contract principles recogniz[e] that a person *not a party to a contract* cannot be held liable to it . . . The rationale for this rule is that the inability of a party to a contract to fulfill an obligation thereunder cannot serve as a basis to conclude that other entities, *who are not party to the contract*, are liable for that obligation.") (internal quotation omitted). While these cases stand for the unremarkable proposition that one not party to a contract may not be held liable for a breach of that contract, this proposition does inform the question of whether a non-party's conduct can serve as grounds for a party to refuse to perform under the contract.  The contract at issue here, at least with regard to the Earn-Out Payments, is a contract between IH Rep and Tutor Perini.  Segal is a stranger to that relationship.  The conduct of Segal, a nonparty, cannot relieve Tutor Perini of its obligation to IH Rep.  With that said, Tutor Perini is not without recourse in the event a non-party, like Segal, wrongfully causes it to make inflated Earn-Out Payments to IH Rep.  Any recovery from such non-parties, however, must be pursued in an action directly against those non-parties; it cannot be achieved through an offset from the amounts Tutor Perini is contractually obliged to pay and IH Rep is contractually entitled to receive.

Based on the foregoing, the motion for judgment on the pleadings as to Counts I, II and III of the Complaint must be GRANTED.

## D. The Motion to Dismiss The Fraud Counterclaim

Segal moves to dismiss the fraud counterclaim for failure to meet Court of Chancery Rule 9(b)'s particularity requirement and, in part, based on the statute of limitations. To plead a claim of fraud that can withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to put the defendant on notice of the elements of common law fraud: "(1) that defendant made a false representation, usually one of fact; (2) with the knowledge or belief that the representation was false, or with reckless indifference to the truth; (3) with an intent to induce the plaintiff to act or refrain from acting; (4) that plaintiff's action or inaction was taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of her reliance on the representation."[81] Court of Chancery Rule 9(b) requires the plaintiff to plead the circumstances constituting the fraud with particularity.[82] This heightened pleading requirement for fraud "safeguards potential defendants from

---

[81] *Fortis Advisors*, 2015 WL 40137, at *6.

[82] *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 207 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007).

frivolous accusations of moral turpitude"[83] and "encourages a greater degree of pre-institution investigation by the plaintiff."[84] The factual circumstances to be "stated with particularity refer to the time, place, and contents of the false representations; the facts misrepresented; the identity of the person(s) making the misrepresentation; and what that person(s) gained from making the misrepresentation."[85]

Tutor Perini alleges that "Segal caused Five Star to make erroneous assumptions regarding certain project disputes that resulted in misstatements of the Pre-Tax Profit Reports," and that this "conduct was knowing and intentional, and was intended to benefit [Segal]."[86] As an example, Tutor Perini alleges, "Segal provided false information relating to projects involving Hudson Yards C-Core & Shell, Baccarat Hotel, and Carnegie 57."[87] It further asserts that this conduct led

---

[83] *Desert Equities*, 624 A.2d at 1208 (citing *U.S. ex rel Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981), *cert. denied*, 455 U.S. 999 (1982)).

[84] 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1296 (3d ed. 2017).

[85] *Trenwick*, 906 A.2d at 207–08.

[86] Def.'s Answer, Countercl. ¶¶ 14–15.

[87] Def.'s Answer, Countercl. ¶ 11.

Tutor Perini to calculate Pre-Tax Profits based on inaccurate information and, thus, to make inflated Earn-Out Payments.[88]

Segal argues that Tutor Perini fails to meet Rule 9(b)'s particularity requirement because: (i) Tutor Perini never identifies what specific assumptions relating to project disputes provided by Segal were false; (ii) estimates or projections regarding potential future revenue are not actionable as fraud statements; and (iii) Tutor Perini does not allege the level of Segal's involvement in preparing assumptions regarding project disputes or financial statements. For the reasons stated below, I agree on all fronts.

While Tutor Perini lists three projects by name, and alleges summarily that Five Star provided "inaccurate," "erroneous" and "overstated" information relating to these projects,[89] it fails to allege, *inter alia*, how the amounts provided by Five Star were "overstated," how the information was "inaccurate" or "erroneous," what role Segal played in preparing Five Star's disclosures, how Segal caused Five Star to provide the fraudulent information, when and where the alleged fraudulent

---

[88] Def.'s Answer, Countercl. ¶¶ 1–2, 11 (Specifically, Tutor Perini alleges that "Segal misused his position as CEO of Five Star to provide inaccurate information for the purpose of calculating Yearly Earn-Out Payments.").

[89] Def.'s Answer, Countercl. ¶¶ 2, 11, 14, 21–22.

statements were made or to whom they were made.[90]  This lack of particularity is fatal to the fraud counterclaim as a matter of law.

Moreover, while "[m]alice, intent, knowledge and other conditions of mind of a person may be averred generally," if the alleged fraud "has at its core the charge that the defendant knew something, there must, at least, be sufficient well-pled facts from which it can be reasonably inferred that this 'something' was knowable and that the defendant was in a position to know."[91]  Here, Tutor Perini asserts that "Segal's improper conduct was knowing and intentional, and was intended to benefit himself and harm Tutor Perini."[92]  While it might reasonably be inferred from the facts alleged that Segal may have been aware that Tutor Perini would use the information provided by Five Star to calculate Pre-Tax Profit, the counterclaim

---

[90] *See Abbott Labs. v. Owens*, 2014 WL 8407613, at *7 (Del. Super. Sept. 20, 2014) (noting that Rule 9(b) requires a plaintiff pleading fraud to allege the "time, place and contents of the false representation").

[91] *Trenwick*, 906 A.2d at 208 (internal quotation omitted).  In *Trenwick*, the court found the "allegations [to be] precisely the sort of unspecific, broad-brush generalities that Rule 9(b) is intended to preclude from serving as a basis for a fraud claim." *Id.*  The court explained that the allegations in the complaint did not state what aspects of the financial statements claimed to have been tainted were, in fact, affected by improper accounting practices, nor did it describe circumstances that would "suggest that any inaccuracies were intentional, rather than good faith mistakes in estimation." *Id.*  Just as in *Trenwick*, Tutor Perini's counterclaim states only that Segal "provided false information relating to [particular projects]" alleging, in conclusory fashion, that Segal acted knowingly and intentionally to benefit himself by increasing his and others' Earn-Out Payments.  Def.'s Answer, Countercl. ¶ 11.

[92] Def.'s Answer, Countercl. ¶ 15.

alleges no facts that would allow a reasonable inference that Segal was aware of the falsity of the information supplied.[93]

The lack of particularity in Tutor Perini's pleading is especially baffling when one considers the circumstances in which the allegedly fraudulent conduct occurred. This is not the typical situation where the party claiming fraud is on the outside looking in without meaningful access to the information upon which a claim of fraud might rest. Tutor Perini acquired Five Star as part of the Acquisition and continued to employ Segal as Five Star's CEO for years after the closing. Thus, as parent of Five Star and employer of Segal, Tutor Perini presumably had access to financial and other information that would allow it to point specifically to the manner in which the amounts were inflated and to the nature of the inaccuracy.[94] Yet, Tutor Perini relies on general allegations of "erroneous assumptions" and "inaccurate" or "false"

---

[93] I reject Tutor Perini's *res ipsa loquitor*-like argument that because Segal was CEO of Five Star, and Five Star supplied "inaccurate" information to Tutor Perini, Segal must have known that the information was inaccurate. First, the argument ignores the fact that "representations regarding future conduct, predictions and expressions of opinion generally do not give rise to actionable fraud." *See Trenwick*, 906 A.2d at 209. Second, this court is loath to make such unreasonable inferential leaps as a means to find that actionable wrongdoing has been pled. *See, e.g.*, *Ironworkers Dist. Council of Phila. & Vicinity Ret. & Pension Plan v. Andreotti*, 2015 WL 2270673, at \*26, \*31–32 (Del. Ch. May 8, 2015) (in shareholder derivative action, rejecting plaintiff's *res ipsa loquitor*-styled argument that because defendant company "botched" costly prior litigation and settlement "*somebody* must [have been] liable for a breach of fiduciary duties").

[94] Tutor Perini's ability to provide such additional information when it exists is demonstrated by its Arbitration Demand incorporated by reference in the Complaint. *See* Compl. Ex. D.

31

information.[95]  In light of the purposes of Rule 9(b) and the particular circumstances presented here, these allegations are simply inadequate.

Finally, I note that after Segal filed his motion to dismiss based on failure to plead fraud with particularity, Tutor Perini had the opportunity to amend its counterclaim under Court of Chancery Rule 15(aaa) to comply with Rule 9(b)'s pleading standard.[96]  By failing to seek leave to amend, Tutor Perini chose to rest on its general factual allegations rather than supplement them with particular facts. Tutor Perini must now bear the consequences of that decision.[97]

Having found the pleading insufficient to satisfy the requirements of Rule 9(b), I need not address Segal's statute of limitations argument.

---

[95] Def.'s Answer, Countercl. ¶¶ 11, 14.

[96] Ch. Ct. Rule 15(aaa) provides that:

> a party that wishes to respond to a motion to dismiss under Rules 12(b)(6) or 23.1 by amending its pleading must file an amended complaint, or a motion to amend in conformity with this Rule, no later than the time such party's answering brief in response to either of the foregoing motions is due to be filed. In the event a party fails to timely file an amended complaint or motion to amend under this subsection (aaa) and the Court thereafter concludes that the complaint should be dismissed under Rule 12(b)(6) or 23.1, such dismissal shall be with prejudice.

[97] *See Griffin Corporate Serv., LLC v. Jacobs*, 2005 WL 2000775, at *4 n.24 (Del. Ch. Aug. 11, 2005) ("I note that Counterclaim Plaintiffs made a conscious decision to stand on the allegations of their Counterclaim by answering [the] motion to dismiss. Amendment of the Counterclaim at this point in time would be improper under Rule 15(aaa).").

## III.   CONCLUSION

For the foregoing reasons, IH Rep's motion for judgment on the pleadings as to Count I, II and III of the Complaint and Segal's motion to dismiss Counts I and II of the counterclaims are GRANTED.   The parties shall confer and submit an implementing order within 10 days.